**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **TERRY HARRIS, DOROTHY** | ) | |
| **WATFORD, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.:  2:05CV1083-WKW** |
| | ) | |
| **JOSEPH BORG,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT JOSEPH BORG'S RESPONSE TO**
**PLAINTIFFS' MOTION TO AMEND COMPLAINT (DOC. NO 41)**

**COMES NOW** Defendant Joseph Borg and, files this Response to Plaintiffs' Motion to

Amend Complaint (Doc. no. 41).  In support of this Response, Defendant states as follows:

## I.      STATEMENT OF FACTS

The Plaintiffs were investigated for violation of Alabama securities laws by the Alabama

Securities Commission ("ASC") of which the Defendant is Director, and Plaintiff Harris was

prosecuted and convicted of securities violations in the Circuit Court of Montgomery County,

Alabama.   Plaintiffs filed this lawsuit on April 15, 2005 alleging that Defendant had taken

Plaintiffs' property without due process.  On December 11, 2006, Plaintiffs filed a motion to

amend their Amended Complaint (Doc. no. 35), seeking to add two new Plaintiffs, Wealth

Builders International, L.L.C. d/b/a Wealth Builders Investment Club and Wealth Builders

International Club (hereinafter, collectively, "the Wealth Builders entities").  Plaintiffs attempt to

invoke Federal Rules of Civil Procedure 15 and 17 and allege that the Wealth Builders entities

are indispensable parties and are the real parties in interest.

1

## II.    ARGUMENT

**A.    PLAINTIFFS' BRIEF FAILS TO COMPLY WITH THE COURT'S ORDER OF DECEMBER 11, 2006 AND IS LACKING IN FACTUAL SUPPORT AND LEGAL GROUNDS.**

The Court clearly outlined the requirements for Plaintiffs' brief in support of their motion to amend:

> The brief shall fully establish who the proposed plaintiffs are, their composition, their legal status, their standing and authorization to file this lawsuit, and why they are necessary or indispensable parties and the real parties in interest. The brief shall contain documentation to support its factual allegations and argument with legal citations.

12/11/06 Order (Doc. no. 37) at 1. Plaintiffs completely fail to comply with these requirements.

**1.    PLAINTIFFS HARRIS AND WATFORD DO NOT FULLY ESTABLISH THE PROPOSED PLAINTIFFS' COMPOSITION OR LEGAL STATUS.**

Although Plaintiffs identify the proposed new plaintiffs in vague terms, they fail to present any substantiated evidence of their composition or legal status. In other words, Plaintiffs have simply identified two supposed entities, one a "*de facto*" corporation and the other described as an unincorporated association, and purport to have the standing and authority to bring a lawsuit on behalf of these entities. In support of this assertion, Plaintiffs state in broad terms that they, Harris and Watford, "had an interest in Wealth Builders International" and that the two entities have the same members and were injured. (Doc. no. 41) at 7; *see also* Second Amended Complaint (Doc. no. 33) at ¶¶3-4 (stating that Plaintiffs Harris and Watford both had interests in Wealth Builders International and Infinity 2000). This allegation is akin to claiming that they were on the same bus with the other parties and the bus was involved in an accident. It provides no basis for them being able to prosecute the other parties' claims.

The Plaintiffs' brief is lacking because it does not establish the composition of the proposed plaintiffs. It does not contain any documentation to support its allegations concerning

their legal status as a "*de facto*" corporation or an unincorporated association. Plaintiffs simply make these naked assertions without any written documentation or proof.

### 2. PLAINTIFFS HARRIS AND WATFORD DO NOT FULLY ESTABLISH THE PROPOSED PLAINTIFFS' STANDING TO FILE THIS LAWSUIT.

Second, Plaintiffs Harris and Watford have not established that the proposed plaintiffs have standing to assert the claims of the members of their association. To have standing, and therefore a justiciable "case or controversy," Plaintiffs must establish that: (1) they have suffered a particularized, concrete injury to a legally protected interest (injury-in-fact); (2) the injury is fairly traceable to the challenged action (causation); and (3) it is likely that the injury may be redressed by judicial action (redressability). *See Fla. Public Interest Research Group Citizen Lobby, Inc. v. E.P.A.,* 386 F.3d 1070, 1083 (11th Cir. 2004) (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 805 (11th Cir. 1993)). They provide none of these essential elements.

If a plaintiff is an association, as Plaintiffs nakedly claim here with the proposed Wealth Builders International Club, the plaintiff-association also must show: "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n.,* 432 U.S. 333, 343 (1977); *Warth v. Seldin,* 422 U.S. 490, 511 (1975) (To have "representational standing," an "association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."); *Region 8 Forest,* 993 F.2d at 805 n. 3.

3

A court considers the allegations of the complaint, as well as the Plaintiffs' proof on each element of standing. *See Bischoff v. Osceola County, Fla.,* 222 F.3d 874, 878 (11th Cir. 2000) (observing "each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation"). The Eleventh Circuit has held that "it is not enough that the plaintiff's complaint sets forth facts from which we could *imagine* an injury sufficient to satisfy Article III's standing requirements, since we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 976 (11th Cir. 2005) (internal quotation marks and citation omitted) (emphasis in original).

Even if individual members of the plaintiff-associations had standing to assert the claims here, that does not, in and of itself, establish that the associations themselves have standing. *Cf. Nat'l Parks Conservation Ass'n v. Norton,* 324 F.3d 1229, 1243 (11th Cir. 2003) (noting fact that, in that case, "appellants' members possess Article III standing ... does not confirm that appellants themselves may sue"). Even a real association is an appropriate representative of its members only if the claims it seeks to assert are not so particularized that the presence of the individual members is indispensable to a just resolution of the cause. Accordingly, "an association may have standing to seek 'a declaration, injunction, or some other form of prospective relief' on behalf of its members, [but] it does not enjoy standing to seek damages for monetary injuries peculiar to individual members where the fact and extent of injury will require individualized proof." *Self-Insurance Inst. of Am., Inc. v. Korioth,* 53 F.3d 694, 695-96 (5th Cir. 1995) (quoting *Warth v. Seldin,* 422 U.S. 490, 515-16 (1975)). Even where an organizational complaint does seek injunctive or declaratory relief, the third prong of the *Hunt* test is not automatically

4

satisfied. *Bano v. Union Carbide Corp.,* 361 F.3d 696, 714 (2d Cir. 2004). Instead, the court must determine whether "the fact and extent of the injury that gives rise to the injunctive relief would require individualized proof, or [whether] the relief requested would require the participation of individual members in the lawsuit." *Id.* (citation and internal quotations omitted). Here the plaintiffs seek a recovery for other parties and apparently contend that the court should trust them to see that it winds up in the right pockets.

Plaintiffs Harris and Watford fail to make any of the allegations necessary to show that the Wealth Builders entities have standing to file this lawsuit, nor do they purport to offer any support for standing in the form of documentation or legal citations.

**3.    PLAINTIFFS HARRIS AND WATFORD DO NOT ESTABLISH THAT THEY HAVE AUTHORIZATION TO FILE THIS LAWSUIT ON BEHALF OF THE PROPOSED PLAINTIFFS.**

The Motion to Amend and brief in support thereof are devoid of any allegations concerning the authorization by the members of the Wealth Builders entities to sue and the representative capacities of Plaintiffs Harris and Watford to sue on behalf of the Wealth Builders entities. In fact, Plaintiffs' Brief is devoid of any mention of whether the members of both Wealth Builders International, L.L.C. d/b/a Wealth Builders Investment Club and Wealth Builders International Club have given Plaintiffs Harris and Watford the authority to sue Defendant on their behalf. Therefore, Plaintiffs fail to even make this required allegation.

In his deposition taken on November 7, 2006, Plaintiff Harris said (in response to a question about WBI):

> I believe I already answered that question to the point where if I authorized that, you know, how could I? I mean *I'm not in an official capacity to authorize anything with Wealth Builders International because I was not associated with Wealth Builders International. I was not associated with Wealth Builders International.*

Harris Depo. at page 30, line 2 - page 31, line 6 (emphasis added) (Harris Depo. Excerpts attached as Ex. A).  Harris further stated in his deposition that:

> And Networker 2000… that's the only company that I was associated with.  I was not an employee, an agent, I was not a officer, director. I was not an owner of Wealth Builders International….

*Id.* at page 83, line 14.  Again,  after being asked if he had claimed to be the founder of Wealth Builders International, Mr. Harris said:

> I don't recall implying that I was a founder. To my knowledge, it [being the founder] means that you may be associated in some kind of way with Wealth Builders International. So if that was said, it was definitely not the truth, you know, because-- simply because I don't know securities laws. If that was said, it wouldn't be true.

*Id.* at page 84, line 20.  Defendant hesitates to mention Plaintiff Watford since the Defendant recalls that the attorney for the Plaintiffs told the Court at the December 11, 2006 status conference that Ms. Watford had been included in this action only as a class representative and that she had no individual claim (a position necessitated by the claim that the two proposed plaintiffs were actually the real parties in interest). Nevertheless, lest the Court wonder whether Ms. Watford has authorized the inclusion of the Wealth Builders entities, the Defendant cites the following from Ms. Watford's deposition of November 3, 2006:

> I was not in the Core Group of Wealth Builders International. I had nothing to do with Wealth Builders except that I was a member of Wealth Builders. But I was not on the Core Group. I did not hold an office. Nor was I on any kind of board for Wealth Builders.

Watford Depo. at page 28, line 1 (Watford Depo. Excerpts attached at Ex. B).

Thus, the Plaintiffs have provided nothing to the Court to show that they are authorized to bring these amorphous "Wealth Builder" entities into this action.

### 4. PLAINTIFFS HARRIS AND WATFORD DO NOT ESTABLISH WHY THE PROPOSED PLAINTIFFS ARE NECESSARY OR INDISPENSABLE PARTIES AND THE REAL PARTIES IN INTEREST.

Plaintiffs' Brief also does not explain why they claim that the Wealth Builders entities are the necessary or indispensable parties and the real parties in interest. Rule 17(a) of the Federal Rules of Civil Procedure provides that "every action shall be prosecuted in the name of the real party in interest." In order to demonstrate that the proposed Wealth Builders entities are a real party in interest, Plaintiffs Harris and Watford must allege facts sufficient to reveal that the proposed plaintiffs suffered an injury, that the injury was caused by the defendant's illegal conduct, and that his injury could be redressed by a favorable outcome to the lawsuit. *See Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982). All federal actions are required to "be prosecuted in the name of the real party in interest," FED. R. CIV. P. 17(A), "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as *res judicata.*" Rule 17 advisory committee notes (1966).

Plaintiffs make conclusory statements that the Wealth Builders entities are the real parties in interest because "it had the primary an [sic] interest in the funds frozen and seized by Borg and is entitled to enforce the rights to those funds." (Doc. no. 41) at 8. Plaintiffs offer no documentation to substantiate their allegation that the Wealth Builders entities are the real parties in interest. Additionally, Plaintiffs Harris and Watford do not make any allegations demonstrating that the Wealth Builders entities are necessary or indispensable to this action.

In sum, Plaintiffs Harris and Watford do not adequately explain the composition, legal status, standing or authorization to sue of the proposed plaintiffs, nor does Plaintiffs' brief contain documentation or legal argument to support their factual allegations concerning why they claim that the Wealth Builders entities are the necessary or indispensable parties and the real parties in interest. Therefore, the Court should deny Plaintiffs' Motion to Amend.

**B.    PLAINTIFFS' MOTION TO AMEND IS UNTIMELY PURSUANT TO THE COURT'S MAY 12, 2006 SCHEDULING ORDER.**

Ordinarily, requests for leave to amend pleadings are viewed through the prism of Federal Rule of Civil Procedure 15(a), which provides that "leave shall be freely given when justice so requires." However, the critical procedural fact in this case is that Plaintiffs have moved for leave to add additional Plaintiffs approximately five months after expiration of the deadline prescribed by the Rule 16(b) Scheduling Order. 5/12/06 Scheduling Order (Doc. no. 21) at Section 4 ("Motions to amend the pleadings and to add parties shall be filed on or before **July 25, 2006.**") (emphasis in original). As such, the Court should scrutinize Plaintiffs' Motion to Amend under Rule 16(b), which forbids modification of a scheduling order absent a showing of "good cause." The Rule 16 hurdle must be surmounted antecedent to any Rule 15 analysis. *See Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998) ("because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)"); *Alexander v. AOL Time Warner, Inc.,* 2005 WL 1182950, *1 (11th Cir. May 19, 2005) (when granting leave to amend a complaint "would require modifying a Rule 16 scheduling order, the movant must first show good cause"). The deadlines set forth in Rule 16(b) scheduling orders are firm settings that must be taken seriously by both the Court and the litigants appearing before it. To allow parties to circumvent long-expired deadlines merely by invoking the liberal leave to

8

amend policy espoused by Rule 15(a) would be to "render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa,* 133 F.3d at 1419. *See also Morrison v. Exxonmobil Corp.,* 2006 WL 42142, *3 (M.D. Ga. Jan.6, 2006) ("When a motion to amend is filed after a scheduling order deadline, as is the case here, Rule 16 is the proper guide for determining whether a party's delay may be excused."); *Richardson v. Georgia Pacific Corp.,* 2005 WL 1278833, *1 (S.D. Ala. May 26, 2005) ("A motion for leave to amend filed after the deadline for amending pleadings set forth in the scheduling order is governed by the stricter standard for amendment set forth in Rule 16(b) rather than the liberal amendment standard set out in Federal Rule of Civil Procedure 15(a)."); *Nobles v. Rural Community Ins. Services,* 303 F.Supp.2d 1279, 1283 (M.D. Ala. 2004) ( "It is only after the court addresses whether the proposed amendment may be granted under Rule 16 that the court is to determine whether it is proper under Rule 15.").

Plaintiffs' late-filed proposed amendment is not permissible unless it comports with Rule 16(b)'s directive that modifications to a pretrial scheduling order may be made only "upon a showing of good cause." *Id.* Interpreting this standard, the Eleventh Circuit has explained that it "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa,* 133 F.3d at 1418; *see also Argo Systems FZE v. Liberty Ins. PTE, Ltd.,* 2005 WL 1355060, *5-6 (S.D. Ala. June 7, 2005) (similar); *Williams v. Baldwin County Comm'n,* 203 F.R.D. 512, 516-17 (S.D. Ala. 2001) (denying extension where plaintiff's counsel was inattentive to scheduling order). Simply put, the touchstone of the Rule 16(b) inquiry is whether Plaintiffs exercised diligence in attempting to comply with the Scheduling Order deadlines for amending pleadings and adding parties. *See, e.g., Nobles v. Rural Community Ins. Services,* 303 F.Supp.2d 1279, 1284 (M.D. Ala. 2004) ("The court's focus in evaluating a motion

to amend under Rule 16 is on [the movant]'s diligence; that is, the court may grant the late-filed motion if the pretrial schedule could not reasonably have been met despite [the movant]'s diligence."). If the movant was not diligent, then "the court's inquiry should end." *Id.; see also Lord v. Fairway Elec. Corp.,* 223 F.Supp.2d 1270, 1277 (M.D. Fla. 2002) ("A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry, ... and the record in this case reveals a serious lack of diligence on the part of Plaintiff.").

The facts of the case at bar illustrate a complete lack of diligence. This is not a case where facts came to light that necessitated the addition of a new cause of action or a new defendant. Rather, Plaintiffs now belated allege that the Wealth Builders entities are the real parties in interest and have been all along. In fact, they go so far as to allege that Defendant is not prejudiced by the attempted late amendment because Defendant has been on notice that the Wealth Builders entities exist and are involved. Plaintiffs bear the burden of filing their lawsuit with the appropriate plaintiff parties, and their lack of diligence in doing so does not amount to "good cause" under Rule 16(b).

## C.    IN THE ALTERNATIVE, UNDER RULE 15, JUSTICE DOES NOT REQUIRE LEAVE TO AMEND UNDER THE CIRCUMSTANCES AT BAR.

Even if the Court determined that Plaintiffs have met their burden of proof for "good cause" under Rule 16, further analysis under Rule 15 is warranted. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . . when justice so requires." FED. R. CIV. P. 15(a).[1]

In *Foman v. Davis,* 371 U.S. 178 (1962), the Supreme Court declared that trial courts have broad

---

[1]  Rule 15 also provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been place upon the trial calendar, the party may so amend it at any time within 20 days after it is served." FED. R. CIV. P. 15(a). Clearly, the time has long passed whereby this component of the Rule would be applicable, especially since Plaintiffs have already amended their Complaint once well past the Scheduling Order deadline and seek to do so again months after the deadline has passed.

discretion in permitting or refusing to grant leave to amend.  *Id.* at 182.  "In the absence of any apparent or declared reason--such as undue delay[2], bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' "  *Id.* However, the facts of this case necessitate a denial of Plaintiff's Motion to Amend.

Plaintiffs assert that they have requested leave to amend in good faith because the Court denied their class certification motion on October 31, 2006, and the current amendment is necessary to cure deficiencies resulting from that ruling.  *See* (Doc. no. 41) at 4. To the extent the class allegations were dismissed, the Plaintiffs have no one but themselves to blame. They totally failed to provide a legal basis for such claims. The 10/31/06 Order did order Plaintiffs to file an Amended Complaint "reflecting only that the class allegations have been stricken" (Doc. no. 28) at 2, and Plaintiffs filed an Amended Complaint on November 9, 2006.  (Doc. no. 29).  It is true that their Amended Complaint failed to totally remove those class allegations, as ordered, but that failure-to-comply cannot be parlayed into permission to introduce totally new parties  and theories. Clearly, the Court's Order suggested that Plaintiffs not be given free reign to make broad-scale amendments to the Complaint, but was to be limited to striking the class allegations. Thus, at that time, Plaintiffs did not move for leave to add additional plaintiffs due to the Court's

---

2    Under Alabama state law, undue delay can have two different meanings in a case.  First, the trial court has discretion to deny an amendment to a pleading if allowing the amendment would unduly delay the trial. *Horton v. Shelby Med. Ctr.,* 562 So.2d 127, 130 (Ala. 1989). Second, an unexplained undue delay in filing an amendment when the party has had sufficient opportunity to discover the facts necessary to file the amendment earlier is also sufficient grounds upon which to deny the amendment.  *Rector v. Better Houses, Inc.,* 820 So.2d 75, 78 (Ala. 2001)(holding that the trial court properly struck the amended complaint when the plaintiff offered no reason to refute the trial court's finding that the new allegations in the amended complaint were based on facts the plaintiff had known since the beginning of the action); *Burkett v. American Gen. Fin., Inc.,* 607 So.2d 138, 141 (Ala. 1992) (holding that the trial court did not exceed its discretion in striking the amended complaint where the plaintiffs had learned of the facts underlying the new allegations six months before they attempted to amend). Both examples of undue delay are applicable in this case.

ruling denying class certification.  Instead, Plaintiffs waited an additional month and are now attempting to assert that the Wealth Builders entities are the real parties in interest.  As such, the Court should deny Plaintiffs' Motion to Amend as untimely.

Second, the proposed amendment is a bald-faced attempt to overrule the Court on its dismissal of the class action claim. Plaintiffs have had a full opportunity to show that the members of these "*de facto*" corporation and unincorporated association were entitled to participate in this action as members of a class.  They failed abysmally to do so. If any unsuccessful class representative could, after failing to prove his entitlement to class certification, claim that the putative class members were part of some amorphous group, there would be no need for class actions. An aspiring class representative could get class treatment by simply claiming such a group existed and, thereby, avoid proving the prerequisites for a class action. That would be very helpful for an aspiring class representative like Mr. Harris who could not hope to be considered an appropriate representative of this "class," having been convicted of securities violations as to the very members of the class.

Clearly, allowing the proposed amendment of the Complaint would lead to injustice as Plaintiffs are simply trying to circumvent the Court's ruling denying class certification. Plaintiffs admit that "[a]ll of the potential plaintiffs for a class action lawsuit were members of WBI" and that Defendants had "been on notice of the claims of potential class members, now collectively called Wealth Builders International Investment Club."  (Doc. no. 41) at 4.  In other words, since the Court denied class certification, Plaintiffs are trying to circumvent that ruling by adding an entity that embodies all of the individuals from the rejected putative class action. Under Rule 15(a), this is not an instance where leave to amend should be "freely given when justice so requires."

12

Third, Plaintiffs have known the facts necessary to file the amendment earlier. In fact, the Second Amended Complaint contains facts that Plaintiffs have known since the beginning of the action. Plaintiffs assert that Defendants have known about the Wealth Builders entities all along and are therefore not prejudiced by their addition to the lawsuit. It goes without saying that Plaintiffs bear the burden of pursuing their cause of action with the appropriate parties, and the fact that Defendant was aware of the Wealth Builders entities is not synonymous with being on notice that they are a party. Thus, the Court either should deny Plaintiffs' Motion to Amend Complaint. (Doc. no. 35).

D.    **IN ADDITION, AMENDMENT OF PLAINTIFFS' AMENDED COMPLAINT IS FUTILE.**

The law of this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America,* 367 F.3d 1255, 1263 (11th Cir. 2004). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 822-23 (11th Cir. 1999). The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied. *See, e.g., Burger King Corp. v.. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to amend justified by futility when "complaint as amended is still subject to dismissal"); *Florida Power & Light Co. v. Allis Chalmers Corp.,* 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.,* 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003) ( "In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.");

*see also Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1218 (11th Cir. 2004) (explaining that despite "freely given" language of Rule 15(a), leave to amend may be denied on such grounds as undue delay, undue prejudice, and futility).

For the reasons outlined in Defendant's Motion to Dismiss (Doc. no. 34), Defendant asserts that amendment of Plaintiffs' Amended Complaint is futile because even as amended, Plaintiffs still fail to state a claim and cannot survive a motion to dismiss.

**WHEREFORE, PREMISES CONSIDERED**, pursuant to Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure, Defendant Joseph Borg respectfully moves this Court to deny Plaintiffs' belated attempt to amend their Amended Complaint and order the Plaintiffs to amend the Amended Complaint as they had previously been ordered to do-- reflecting *only* that the class allegations have been stricken.

Respectfully Submitted,

s/Bruce J. Downey, III
**BRUCE J. DOWNEY, III**
**ASB-9205-W86B**
*ATTORNEY FOR DEFENDANT*
*JOSEPH P. BORG, ESQ. ALABAMA SECURITIES*
*COMMISSION*

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama  36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888

14

Jane Brannan, Esq.
Alabama Securities Commission
770 Washington Ave., Ste. 570
Montgomery, AL  36130-4700
Telephone:     (334) 353-4690

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of January, 2007, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Henry L. Penick, Esq.
H. L. Penick & Associates, P.C.
P O Box 967
Birmingham, AL  35201-0967


s/Bruce J. Downey, III
**OF COUNSEL**

15

Exhibit A

1083552

# FREEDOM COURT REPORTING

Page 30

1    Q.    Mr. Harris, you said that

2    the -- Susan and Van Barringer weren't

3    authorized to take that seventy thousand

4    dollars; is that correct?

5    A.    I would assume that if they

6    are not working for me, then I can't

7    authorize them to do nothing.  I would

8    assume that they would just stolen the

9    money on their own and just trying to get

10   off of the hook by implementing that they

11   was my employee -- I mean, they were my

12   employees and that was my way for paying

13   them salary.  So if Joseph Borg really

14   believed that, you know, he shouldn't be

15   in the position that he in anyway.  But

16   Joseph Borg is not stupid.

17   Q.    Well, let me ask you this:

18   Did you authorize Susan and Van Barringer

19   to take seventy thousand dollars?

20   A.    I believe I already answered

21   that question to the point where if I

22   authorized that, you know, I mean, how

23   could I?  I mean, I'm not in a official

## FREEDOM COURT REPORTING

Page 31

1 capacity to authorize anything with

2 Wealth Builders International because I

3 was not associated with Wealth Builders

4 International.  So I couldn't have

5 authorized anybody to do anything out of

6 that account.

7      Q.    Well, then how can you say

8 that Susan and Van Barringer weren't

9 authorized to do it, if your

10 authorization didn't mean anything?

11      A.    I simply said that they

12 implied.  Susan and Van Barringer came to

13 Joseph Borg and Alabama Security

14 Commission and implied that I authorized

15 them to take that money when I had no

16 official capacity to authorize anybody to

17 take anything out of Wealth Builders

18 International.  I didn't have control of

19 those funds.

20      Q.    Well, you are accusing Susan

21 and Van Barringer of doing something

22 improper or illegal and taking seventy

23 thousand dollars out of that Wealth

# FREEDOM COURT REPORTING

Page 83

1      Q.    Mr. Harris, still, the answer

2   to my question is that the cease and

3   desist order didn't order you to do

4   anything that you wanted to do, right?

5      A.    It ordered me -- it appears

6   to order me not to engage in the selling

7   of securities -- I mean cease and desist

8   from selling securities.  So definitely

9   it implies that I did sales securities at

10  one point, when that's a lie.  So, yeah,

11  it appears to be a order, but at the same

12  time, it was written in a way to

13  implicate that I broke the law when I did

14  not.  And Network 2000 is a web posting

15  company by -- selling service by way of

16  network marketing, and that's the only

17  company that I was associated with.  I

18  was not an employee, a agent, I was not a

19  officer, director.  I was not a owner of

20  Wealth Builders International, so, you

21  know, I shouldn't have been even named in

22  this bogus cease and desist order.

23      Q.    But you have claimed to be

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 84

1    the founder of Wealth Builders

2    International, right?

3        A.    Give me the definition of

4    founder and I'll answer that question.

5        Q.    I'm talking about you used it

6    on a document.  You put founder under

7    your signature, and I think there's a

8    video in which you were the founder.

9        A.    I'm asking what I'm claiming

10   now.

11       Q.    Have you ever claimed that

12   you were the founder?

13       A.    I can't claim that I'm a

14   founder of anything if I don't know the

15   legal definition.  So the answer to that

16   would be no.

17       Q.    Have you ever stated in

18   public or on a video that you had made

19   that you were the founder?

20       A.    I don't recall implying that

21   I was a founder.  To my knowledge, it

22   means that you may be associated in some

23   kind of way with Wealth Builder

## FREEDOM COURT REPORTING

Page 85

1  International.  So if that was said, it

2  was definitely not the truth, you know,

3  because -- simply because I don't know

4  security laws.  If that was said, it

5  wouldn't be true.

6          (Whereupon, Exhibit No. 7 was

7  marked for identification and copy of

8  same is attached hereto.)

9      Q.    Look at Exhibit 17 and see if

10  you recognize that.

11     A.    I mean, I can't say that I

12  do.

13     Q.    Do you know if you prepared

14  it?

15     A.    I would definitely not have

16  been the one putting legal terminology

17  like that.

18     Q.    Did you have it prepared?

19     A.    I'm not an attorney or

20  nothing like that.  I would assume that

21  it may have come from in a talk with one

22  of the attorneys with Joseph Borg and

23  when they were discussing possible

Exhibit B

1083552

## FREEDOM COURT REPORTING

Page 28

1  it?  No, I was in Networker2000.  I was not

2  in the Core Group of Wealth Builders

3  International.  I had nothing to do with

4  Wealth Builders, except that I was a member

5  of Wealth Builders.  But I was not on the

6  Core Group.  I did not hold an office.  Nor

7  was I on any kind of board for Wealth

8  Builders.

9        Q.      Okay.  And do you -- But do

10  you know who had authority to instruct

11  Charles Schwab on trades?

12        A.      To my knowledge, the

13  president, Barringer.

14        Q.      Mr. Barringer?

15        A.      Uh-huh.

16        Q.      Anyone else?

17        A.      And Mr. Harris.

18        Q.      And what was Mr. Harris' role

19  with Wealth Builders?

20        A.      Mr. Harris would just research

21  the stocks and make the trades.  He did not

22  hold an office.  He was not on the Core

23  Group.