IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY HARRIS, DOROTHY WATFORD, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO.:  2:05CV1083-WKW |
| | ) | |
| JOSEPH BORG, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR TELEPHONIC STATUS CONFERENCE**

Comes now the Defendant, Joseph Borg, and moves the Court to hold a telephonic status conference in this matter. The purpose of the conference would be to discuss whether the Court would entertain a Motion to Continue the setting on this case to allow the Defendant to file a Motion for Summary Judgment. It has only been since the Court ruled on the Plaintiff's Motion to Amend that the parties have known what claims were before the Court, and the Defendant is entitled to judgment on those claims.

With the denial of the plaintiff's motion, the allegations are very limited, and the Defendant avers that he is entitled to summary judgment on them. The Defendant has completed a motion, is preparing a supporting brief and intended to ask the Court to allow it for good cause including judicial economy. The motion will show that the Defendant is entitled to summary judgment both on the undisputed facts and because of his entitlement to absolute and qualified immunity which he has asserted throughout this matter.

The essence of plaintiff's complaint is the issuance of a cease and desist order, allegedly by defendant. Defendant signed the order, but it was issued by the Commission. Plaintiff claims that this cease and desist order forced him to liquidate certain stocks and options, but the

1

undisputed facts are that the order in question was issued almost two months *after the liquidation it supposedly caused.* Further, in his attempt to persuade the Court that his amendment should be allowed, plaintiff averred that the alleged damages from this liquidation belonged to the additional defendants he sought to add, essentially confessing that they were not his to claim.

It is hard to imagine any act more definitively within the discretionary duties of the Director of the Alabama Securities Commission than *signing* a cease and desist order on behalf of the Commission. Nowhere in Plaintiff's complaint does he suggest that it is not within those duties. Nowhere does he provide any basis for qualified immunity not applying to his act. The Plaintiff has no basis for defeating this immunity. To the extent he sues the Defendant in his official capacity, he is entitled to 11th Amendment Immunity.

So that the Court can see better the bases for the motion Defendant would file, Defendant attaches a copy of the Motion and Affidavit he would file if allowed to do so.

Respectfully submitted,

s/Bruce J. Downey, III
**BRUCE J. DOWNEY, III**
**Attorney for Defendant**
**Joseph P. Borg, Esq.**

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888

Jane Brannan, Esq.
The Alabama Securities Commission
770 Washington Ave., Ste. 570
Montgomery, AL 36130-4700
(334) 353-4690

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of May, 2007, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Henry L. Penick, Esq.
H.L. Penick & Associates, P.C.
P.O. Box 967
Birmingham, AL 35201-0967


**s/Bruce J. Downey, III**
OF COUNSEL

# ATTACHMENT - MOTION AND AFFIDAVIT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO.:  2:05CV1083-WKW |
| JOSEPH BORG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT JOSEPH BORG'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Defendant Joseph Borg and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Court for summary judgment on all Plaintiff's claims. In support of this motion, Defendant files the attached affidavit of Joseph P. Borg and states as follows:

1.    The Plaintiffs were investigated for violation of Alabama securities laws by the Alabama Securities Commission ("ASC") of which the Defendant is Director.  While he was under investigation, and upon the advice of his attorney, Plaintiff Harris caused certain securities, which were being held in California, to be liquidated, returning some of the proceeds of that liquidation to the investors.  Thereafter, the ASC issued a cease and desist order which required only that the ordered parties, who were not licensed as securities brokers in Alabama:

"… Cease and desist from further offers or sales of any security into, within

or from the State of Alabama."

This order was dated June 10, 2003 and it was issued by ASC, not Joseph Borg, the Defendant.

1

[Attachment 1 to Borg Affidavit]

2.    Plaintiff's original complaint which, by this Court's order of March 13, 2007 denying Plaintiff's Motion to Amend, is the pleading on which this matter is to be considered, names three plaintiffs: Terry Harris, Dorothy Watford, and a purported class variously described as Networker 2000.com, Inc, Wealth Builders International and Infinity 2000. [Attachment 2 to Borg Affidavit]  The Court denied the certification of any class in its order of October 31, 2006 and ordered the class allegations stricken. The parties have submitted a Stipulation of Dismissal (with prejudice) for the other Plaintiff, Ms. Watford. This was done on her instructions.  This leaves only Mr. Harris as a plaintiff and only his claims to be defended by Mr. Borg.

2.    Mr. Borg is the only Defendant. He is described as "Commissioner" of the Alabama Securities Commission ["ASC"] in Plaintiff's Complaint. In fact, he is the Director of the ASC and is not one of its commissioners. He serves to carry out the decisions of the ASC commissioners. The complaint avers that the Defendant acted in his official and individual capacity, but it is unclear which acts Mr. Harris attributes to which capacity[ies]. For purposes of this motion, Defendant assumes that Plaintiff contends that Mr. Borg took all of the actions complained about in both capacities

3.    Mr. Harris' Complaint has one "Causes [sic] of Action" that complains of the defendant: a). issuing a cease and desist order, b). causing Harris to "send a letter to Charles Schwab… to liquidate the stock and option positions he controlled, and c). causing Harris to liquidate those stock and option positions. Mr. Harris claims that these actions violated various statutes and the U.S. Constitution as a "taking" without "procedural due process."  These are the only acts attributed to Mr. Borg in the Complaint.

2

4.      All of Plaintiff's claims are based, at least partially, upon the contention that the cease and desist order forced Mr. Harris to liquidate accounts. The plain terms of the order, set out above, show that it did no such thing. It was directed solely to cessation of the offering or selling any security by the unregistered parties and entities. Additionally, the order is dated June 10, 2003. Mr. Harris contends in his Complaint that he was forced to liquidate the accounts in April of 2003. That was almost two months before the issuance of the order he says forced him to take the action.  Further, on January 17, 2003, Charles Schwab had written Mr. Harris telling him that it was requiring him to close the accounts referred to in the Complaint-- three months before he liquidated the accounts and five months before to supposedly causative order. [Attachment 5 to Borg Affidavit]  That liquidation was personally authorized by Mr. Harris on April 15, 2003 and conveyed to Charles Schwab in a letter from Mr. Harris' attorney, Andrew Chambless, on April 18, 2003.  [Attachment 3 to Borg Affidavit]

5.      The issuer of the cease and desist order was ASC. Mr. Borg signed it as Director, but it is the Commission that has the power to issue such orders and Mr. Borg can only sign them in his official capacity. Mr. Harris came to the attention of the ASC based on a complaint by someone other than Mr. Borg. Mr. Harris' activities were investigated by members of the ASC investigatory staff, not Mr. Borg. Mr. Borg's actions as regards the investigation were taken in reliance on the facts reported to him by his staff, the recommendations of his legal counsel and admissions and acknowledgements made by Harris' numerous legal counsel. Mr. Borg took no independent actions regarding Mr. Harris for which he could conceivably have individual liability.  [See Borg Affidavit]  These facts will be undisputed before the Court. The Court can expect plaintiff to claim that Mr. Borg had it in for him, but those "claims" will be unalloyed and

unsupported opinions without any basis in fact. The actual facts provide a basis for summary judgment for Mr. Borg against Mr. Harris.

      6.     Mr. Harris has pled that he does not own the claims he pursues in his complaint. In his Brief in Support of Motion to Amend Complaint, he first notes that a real party in interest is "the person who possesses the rights sought to be enforced [Brief III A. @ page 7]. He then asserted:

      "WBI Investment Club is the real party in interest…."

This assertion is an admission that Mr. Harris does not possess the rights he seeks to enforce. For that reason alone, summary judgment should be granted against him.

      7.     Mr. Borg is entitled to absolute 11th Amendment immunity from any monetary claims made as to any acts taken in his official capacity. He is entitled to qualified immunity as to any acts taken in his individual capacity as Director of ASC.

      8.     The Eleventh Amendment prohibits Plaintiff's § 1983 action seeking compensatory and punitive damages against Joseph Borg in his official capacity. *See Taylor v. Alabama*, 95 F. Supp. 2d 1297 (M.D. Ala. 2000); *Wright v. Butts,* 953 F.Supp. 1352, 1358 (M.D. Ala. 1996). "Lawsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir. 1990). The Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." *See Edelman v. Jordan*, 415 U.S. 659, 663 (1974). This rule applies not only in suits against the state but also against a "state agency or instrumentality." *Id*. The Courts have determined that this rule of immunity applies regardless of whether the action is instituted against a state, a state agency or instrumentality or a state official. *Hardin v. Adams*, 760 F.2d 1158 (11th Cir. 1985).

4

Based on these principles, the court should find that Plaintiff's § 1983 claims for compensatory and punitive damages against Joseph Borg in his official capacity are due to be dismissed.

9.    When a government official is sued in his individual capacity for money damages based on alleged civil rights violations, he may posit an affirmative defense of qualified immunity.[1] *See Swint v. City of Wadley, Ala.,* 51 F.3d 988, 994 (11th Cir. 1995). The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow,* 457 U.S. at 818; *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir. 1988).

10.    In the present case, Plaintiff has failed to come forward with any evidence of any constitutional deprivation. Plaintiff cannot point to a controlling or factually similar case because Plaintiff has no evidence that Joseph Borg committed a constitutional violation. Thus, Plaintiff has failed to make a *prima facie* case for § 1983 liability against Defendant in his individual capacity.

11.    In addition to his § 1983 claims, Plaintiff has also failed to make a *prima facie* case based on the equal protection clauses of the Fourteenth and Fifth Amendments of the Constitution. Specifically, to establish an equal protection claim, a plaintiff must show that he is

---

[1]    To the extent that Plaintiff's § 1983 claims seeking injunctive relief apply to Joseph Borg in his individual capacity, which is not apparent on the face of Plaintiff's Complaint, they should be dismissed based on qualified immunity.

similarly situated to others who received more favorable treatment, and that his adverse treatment was based on some constitutionally protected interest such as race. *See Jones v. Ray,* 279 F.3d 944, 947 (11th Cir. 2001) (finding that elements of equal protection claim include differential treatment from others similarly situated, and intentional discrimination). A plaintiff raising an equal protection claim must still show intentional differences in treatment from others similarly situated to him.  *See Jones,* 279 F.3d at 947 (dismissing equal protection claim when even liberal interpretation of complaint did not reveal any factual basis for equal protection claim); *Anderson v. Greene,* 2005 WL 3058095 *5 (S.D. Ala. 2005) (granting defendant's motion to dismiss plaintiff's Fourteenth Amendment equal protection claim due to absence of factual support).

     12.     With regards to Plaintiff's § 1983 Fourteenth Amendment equal protection claim, Plaintiff alleged that Joseph Borg violated the Constitution "by violating Plaintiffs' clearly established rights to have a procedural due process hearing before the taking of their property." *See* Complaint at ¶ 17.  A review of the Complaint reveals that Plaintiff's equal protection allegations are plainly lacking.  Plaintiff has not indicated that anyone is similarly situated to them, much less identified those persons. Nor have they explained the manner in which they believe that they were subjected to disparate treatment (*e.g.,* because of their race).  Not only are Plaintiff's allegations lacking, but Plaintiff has not come forward with a single piece of evidence of disparate treatment.  Plaintiff cannot point to a similarly situated individual who was treated more favorably because none exist.  Thus, Plaintiff fails to make a *prima facie* case based on the equal protection clause of the Fourteenth Amendment.

     13.     Additionally, Plaintiff's claims should also be dismissed to the extent that they allege violations of Fifth Amendment due process rights. The Fifth Amendment's due process

clause does not extend to state and local governments, but is instead confined to the federal government. To the extent that Plaintiff is seeking to bring a separate, distinct Fifth Amendment due process claim against Defendant, Plaintiff's claims are due to be dismissed. *See Riley v. Camp,* 130 F.3d 958, 972 n. 19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here - the acts complained of were committed by state rather than federal officials."); *Dowdell v. Chapman,* 930 F. Supp. 533, 542 (M.D. Ala. 1996) ("The Fifth Amendment's Due Process Clause applies only to the federal government."). Thus, Plaintiff fails to make a *prima facie* case based on the equal protection clause of the Fifth Amendment.

14.    There are no genuine issues of fact, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Joseph Borg respectfully moves this Court to dismiss the following claims with prejudice and grant Defendant's Motion for Summary Judgment:

- Count I – Plaintiff's § 1983 claim for compensatory and monetary damages against Defendant in his official capacity;

- Count I – Plaintiff's due process claims based on the Fourteenth and Fifth Amendments.

- All claims for failure to state grounds upon which relief can be granted.

s/Bruce J. Downey, III
**BRUCE J. DOWNEY, III**
**ASB-9205-W86B**
*ATTORNEY FOR DEFENDANT*
*JOSEPH P. BORG, ESQ. ALABAMA SECURITIES COMMISSION*

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888

Jane Brannan, Esq.
Alabama Securities Commission
770 Washington Ave., Ste. 570
Montgomery, AL  36130-4700
Telephone:    (334) 353-4690


## CERTIFICATE OF SERVICE

    I hereby certify that on this the 16th day of May, 2007, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Henry L. Penick, Esq.
H. L. Penick & Associates, P.C.
P O Box 967
Birmingham, AL  35201-0967


s/Bruce J. Downey, III
**OF COUNSEL**

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| TERRY HARRIS, DOROTHY WATFORD, ET AL., | ) )  ) |
| Plaintiffs, | ) ) |
| vs. | ) )     CASE NO: 2:05CV1083-WKW-TFM |
| JOSEPH BORG, | ) ) ) |
| Defendant. | ) |

## AFFIDAVIT OF JOSEPH P. BORG

| | |
|---|---|
| STATE OF ALABAMA | ) |
| MONTGOMERY COUNTY | ) |

Joseph P. Borg, being first duly sworn, deposes and says:

1.    I am Joseph P. Borg, Defendant in the above-styled case. I make this affidavit under oath in support of my Motion for Summary Judgment. I am an attorney admitted to practice before this court. I am over the age of nineteen (19) years and submit this affidavit based upon personal knowledge.

2.    I am the Director of the Alabama Securities Commission ["ASC"], a state agency charged with the enforcement of Alabama's securities laws. I am the chief administrative officer of the agency, but I serve under the direction of the Commission. I supervise numerous employees including an investigative division. I rely on the facts and recommendations brought to me by my staff.

3.    I had no personal knowledge of the Plaintiff, Terry Harris, until it was reported to me that our office had received a complaint of possible securities violations on his part from an outside individual. That complaint was given to a member of our investigative staff, Special Agent Rueben Redd, in the normal course of business. At the time the complaint was given to Mr. Redd, I had no knowledge of Mr. Harris' race. However, coincidentally, Mr. Redd, like Mr. Harris, is African American. From that first time to this date, I have handled all matters involving Mr. Harris based on the facts and recommendations made to me by Mr. Redd and his successors and by my departmental legal staff. I have not undertaken any investigation of my own, and all of my actions have been consistent with the recommendations I have received from my staff.

4.    Mr. Harris' race has not played any part in my actions regarding him. In my thirteen years as Director of ASC, I have been involved in numerous investigations of

possible securities law violations. The vast majority of those investigations have been of persons whose race was other than African American.

     5.    Mr. Harris' complaint complains primarily of one (or, possibly, two) alleged action(s) on my part. In Paragraph 13, he avers:

> "13. On or about April 17, 2003, Defendant, Joseph Borg, individually, and in its [sic] capacity as Commissioner of the Alabama Securities Commission issued a Cease and Desist Order and caused Plaintiff, Terry Harris, to send a letter to Charles Schwab, Incorporated to liquidate the stock and option positions in Wealth Builders International account #8172-3879." [Note: This account number should be #8172-3979.]

> "14. On or about April 18, 2003, *as a result of said Cease and Desist Order* [emphasis added], Defendant, Joseph Borg, individually and in its [sic] capacity as Commissioner of the Alabama Securities Commission ordered and caused Plaintiff, Terry Harris, in its [sic] capacity as president and CEO of Networker 2000.com, Inc. to liquidate all stock and option positions held at Charles Schwab, Incorporated in the Infinity 200 account # 4628-5537."

Obviously, the issuance of a Cease and Desist order is one action, but in case Mr. Harris contends that I separately "caused" the letter to Schwab and the liquidation of the Infinity account, I will treat his averment as being of two actions.

     6.    The Cease and Desist order issued against Mr. Harris (and several other persons and entities) is attached hereto as Attachment 1. First, it is obvious that this order did not and could not have caused the letter to Schwab or the instruction to liquidate the Infinity account. That liquidation instruction to Schwab was sent on April 18, 2003 [See the Allegations of Paragraph 14 [Attachment 2] of Harris' complaint and Attachment 3], almost two months before the Cease and Desist order was issued on June 10, 2003. Attachment 4 is a letter dated April 15, 2007 from Mr. Harris authorizing the liquidation. Attachments 3 and 4 show that it was Mr. Harris and his attorney who caused the liquidation of the Schwab accounts, not I. Attachment 5 is a letter from Charles Schwab, dated January 17, 2003 to Mr. Harris. This letter shows that Schwab exercised its rights "... to close your Schwab Account ... effective January 31, 2003. numbers 8172-3979 and ... 4628-5537 ...." Thus, almost six months before the Cease and Desist order, Schwab was closing these accounts, not I.

     7.    The cease and desist order is signed by me as Director of the Alabama Securities Commission. It is issued by the ASC, not by me.

     8.    Concerning the Cease and Desist order and every other action I took in connection with Mr. Harris, I acted in my official capacity, as a discretionary function of my office, subject to the Commission's approval. I have no power or authority to issue

any order in my individual capacity and I did not do so. There is no basis for suing me in my individual capacity.

9.      Specifically concerning the letters to Schwab, every action I took in connection with the fact that these accounts were being closed was taken in my official capacity, as a discretionary function of my office, subject to the Commission's approval. I have no power or authority to issue any order or require any liquidation in my individual capacity and I did not do so. I understood and approved of the fact that these accounts were being liquidated as a device to make a partial return to Mr. Harris' investors. I understood that Mr. Harris was taking this action on the advice of his attorneys in order to try to avoid prosecution for securities violations, but I did not "order" the liquidation of these accounts in any capacity. Mr. Harris chose to take these actions on the advice of his counsel to try to limit his civil and criminal liability. Later, the Alabama Securities Commission entered into an agreement (and not in any individual capacity) with Mr. Harris concerning the handling of the funds received from the liquidations as they were to be transmitted to the investors as a *pro rata* return. That agreement, dated September 30, 2003, is attached as Attachment 6 and shows that Mr. Harris agreed with the return of these funds to the investors on behalf of all of his entities.

10.      I have dealt with Mr. Harris only as Director of the ASC. I have dealt with him as my duties dictated. Deciding whether to issue a cease and desist order is a regular part of my duties for which I must perform due to the position I occupy. In fact, I am not aware that Mr. Harris even contests that signing such orders on the Commission's behalf is a regular part of my discretionary duties. If he does, I am at a loss as to any basis for doing so. In the case of Mr. Harris, I relied upon the facts uncovered by my investigative department and the conclusions and recommendations of my legal staff. My investigators determined that Mr. Harris was not a licensed securities dealer and had collected funds and made trades for others in violation of Alabama's securities laws. The Commission's cease and desist order was very limited. It provided only that he "… CEASE AND DESIST from further offers or sales of any security into, within or from the State of Alabama." I do not understand Mr. Harris to contend that he was or is entitled to offer or sell any security into, within or from the State of Alabama. I believe that his contention was that his actions did not constitute an offer or sale of securities. The Commission determined that he was wrong in that contention, assuming he had been correct and was not, in fact, selling securities, the cease and desist order would have had no effect on him since that is all it instructed him to avoid.

_____
Joseph P. Borg

Sworn to and subscribed before me on this the ___ day of May, 2007.

(SEAL)

_____
NOTARY PUBLIC
My Commission Expires: _3/29/10_

# ATTACHMENT 1

## STATE OF ALABAMA
## ALABAMA SECURITIES COMMISSION

IN THE MATTER OF:      )
     )
TERRY HARRIS      )
PATRICIA MONROE TONEY      )
HULBERT VAN R BARRINGER      )
SUSAN DIANE BARRINGER      )
ANTHONY TALLEY JR      )
NETWORKER2000.COM INC.      )
Also Known As:      )
NETWORKER2000      )
WEALTH BUILDERS      )
  INTERNATIONAL INVESTMENT      )
  CLUB      )
Also Known As:      )
WEALTH BUILDERS      )
  INTERNATIONAL INVESTMENT      )
  CLUB INC      )
Also Known As:      )
INFINITY 2000 INVESTMENT      )
  GROUP AND INVESTMENT CLUB )
N2K INVESTMENT CLUB      )
     )
    RESPONDENTS      )

ADMINISTRATIVE ORDER
NO.CD-2003-0012

### CEASE AND DESIST ORDER

The Alabama Securities Commission ("Commission"), having the power to administer and provide for the enforcement of all provisions of Title 8, Chapter 6, Code of Alabama 1975, the Alabama Securities Act ("Act"), upon due consideration of the subject matter hereof, and having confirmed information of the offer and sale of securities into, within, or from the State of Alabama, has determined as follows:



EXHIBIT

1

<u>RESPONDENTS</u>

1.     TERRY HARRIS ("HARRIS"), is represented to be the president/co-owner of WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB, WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB, INC., and N2K INVESTMENT CLUB, with business addresses of 107-B David Green Road, Hoover, AL 35244, and 8315-E 1st Avenue North, Birmingham, AL 35206.

2.     PATRICIA MONROE TONEY ("TONEY"), is represented to be a co-owner of WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB, with business addresses of 107-B David Green Road, Hoover, AL 35244, and 8315-E 1st Avenue North, Birmingham, AL 35206.

3.     HULBERT VAN R BARRINGER ("HULBERT BARRINGER"), is represented to an employee of WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB with a business address of 107-B David Green Road, Hoover, AL 35244.

4.     SUSAN DIANE BARRINGER ("SUSAN DIANE BARRINGER"), is represented to an employee of WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB with a business address of 107-B David Green Road, Hoover, AL 35244.

5.     ANTHONY TALLEY JR ("TALLEY"), is represented to be an employee/agent of WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB with a home address of 805 Northcrest Drive, Birmingham, AL 35235.

6.     NETWORKER 2000.COM INC. ("N2K"), is represented to be an Alabama Corporation with a business address of 8315-E 1st Avenue North, Birmingham, AL 35206.  N2K is also known as NETWORKER2000.

7.    WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB ("WBI"), is represented to be a susidiary of N2K and a privately owned investment club with a business address of 107-B David Green Road, Hoover, AL 35244. WBI also has a business address of 8315-E 1st Avenue North, Birmingham, AL 35206. WBI has also been known as WEALTH BUILDERS INTERNATIONAL INVESTMENT CLUB, INC., and INFINITY 2000 INVESTMENT GROUP AND INVESTMENT CLUB ("INFINITY").

8.    N2K INVESTMENT CLUB ("N2K INVESTMENT"), is a susidiary of N2K and represented to be a privately owned investment club with a business address of 8315-E 1st Avenue North, Birmingham, AL 35206.

## STATEMENT OF FACTS

9.    N2K is an internet web hosting service in which HARRIS, TONEY, HULBERT BARRINGER, SUSAN BARRINGER, and TALLEY solicited investment opportunities by the use of seminars, meetings and internet web pages.  In addition to joining N2K, members who recruited three (3) other individuals to join N2K were then eligible to become members of WBI.

10.    The Commission is in receipt of information that HARRIS, TONEY, HULBERT BARRINGER, and SUSAN BARRINGER solicited investment opportunities in WBI a private investment club, through seminars, meetings and internet web pages.  HARRIS and TONEY engaged in the offer and/or sale of investment contracts to investors, involving membership interests in WBI, that were neither registered nor exempt from registration, into within and from the state of Alabama.

11.    HARRIS also engaged in the offer and/or sale of investment contracts to investors, involving membership interests in N2K INVESTMENT that were neither registered nor exempt from registration, into within and from the state of Alabama.

12.    From December 1, 1999, through approximately August 2002, HARRIS and TONEY received INFINITY, WBI, and N2K INVESTMENT investor funds at N2K's office located in Birmingham, AL.  They deposited the investor's funds either into INFINITY's Charles Schwab account, WBI's Charles Schwab account, N2K INVESTMENT Charles Schwab account, or into N2K's main business operating bank account located at AmSouth Bank Birmingham, AL.

13.    Beginning January 2002, HARRIS co-mingled investor funds pertaining to INFINITY, WBI, and N2K INVESTMENT depositing them in N2K's main operating business account located at AmSouth Bank, Birmingham, AL.

14.    TALLEY was employed by HARRIS to create and maintain the computer program utilized by WBI to calculate the monthly earnings of investors who invested in WBI's Charles Schwab investment accounts.  Additionally, TALLEY entered the data provide to him by HARRIS into the computer program that was utilized to calculate the monthly returns of investors.  TALLEY would then post the returns on the individual investor's web pages.  Also, TALLEY acted as an agent of WBI by soliciting investment opportunities in WBI, through his participation in presentations conducted at seminars, and meetings.

15.    From May 16, 2002, to present HARRIS and HULBERT BARRINGER, who have sole authority of the WBI Charles Schwab trading account, conducted securities transactions in the form of straight stock options and covered calls stock options trades, acting as account representatives of WBI without benefit of input from the investors.

16.    From Approximately August 2002, HULBERT BARRINGER and SUSAN BARRINGER received WBI investor's funds at a Post Office Box located in Birmingham, AL.  They deposited the investor's funds either into WBI's Charles Schwab account, WBI's bank account at AmSouth Bank Birmingham, AL, or into HULBERT BARRINGER's personally controlled account held at BankcorpSouth Bank, Birmingham, AL in the name of Health Quest.

17.   WBI's investors relied on the expertise and managerial efforts of HARRIS and HULBERT BARRINGER to realize a profit from their WBI investments.

18.   HARRIS, TONEY, HULBERT BARRINGER, and SUSAN BARRINGER acting as agents or brokers of WBI, did obtain physical control of investment funds, and placed monies from investors into securities accounts held at Charles Schwab, account number 8172-3979 in the name of WBI, and account number 4628-5537 in the name of INFINITY, thereby creating a blind pool investment fund.

19.   Results from the WBI trading conducted by HARRIS and HULBERT BARRINGER would then be placed on the individual investor's web pages, which is maintained by another HARRIS owned entity known as N2K.   Although an analysis of the trading accounts shows only three months of positive earnings (profits) resulting from the trades conducted by HARRIS and HULBERT BARRINGER, the computation represented to the investors on each individual web page depicts profits being realized by the investor each month, even when losses occurred in the trading accounts.

20.   When returns are requested to be paid out to the investor, the actual funds were withdrawn from the Charles Schwab trading account and then placed into the WBI bank account at AmSouth Bank, Birmingham, AL, and a check was then issued to the investor.   The majority of the returned funds to investors were actually monies paid into the program by previous investors, not the results of profits earned through trading by HARRIS and HULBERT BARRINGER.   HARRIS and HULBERT BARRINGER are the only individuals authorized to disburse funds from this account.

21.    A review of the registration files of the Commission, disclosed no record of the registration for HARRIS, TONEY, HULBERT BARRINGER, SUSAN BARRINGER, and TALLEY, as securities agents or dealers in the state of Alabama

22.    A review of the registration files of the Commission, disclosed no record of registration, or exemption from registration, of the securities mentioned in paragraph 10 and 11 of WBI and N2K INVESTMENT.

## CONCLUSIONS OF LAW

23.    HARRIS, TONEY, HULBERT BARRINGER, and SUSAN BARRINGER, acted as securities agents and/or broker dealers of WBI, N2K, INFINITY, and N2K INVESTMENTS, by collecting funds from investors for the purpose of investing with an expectation of receiving a profit, without benefit of registration in violation of Section 8-6-3(a), Code of Alabama, 1975.

24.    TALLEY offered/sold the securities of WBI, without benefit of registration in violation of Section 8-6-4(1), Code of Alabama, 1975.

25.    By allowing unrealized profits to be paid to some investors by utilizing other investor funds, and by posting and/or allowing the posting of unrealized profits to the web pages belonging to the investors, HARRIS, TONEY, and TALLEY employed a device and/or scheme to defraud by engaging in a course of business which operated as a fraud or deceit upon investors in violation of Section 8-6-17(a)(1)(2)(3), Code of Alabama, 1975.

This Order does not prevent the Alabama Securities Commission from seeking such other civil or criminal remedies that are available to it under the Alabama Securities Act.

This Order is appropriate in the public interest for the protection of investors and consistent with the purpose of the Alabama Securities Act.

**ACCORDINGLY, IT IS HEREBY ORDERED** that RESPONDENTS immediately **CEASE AND DESIST** from further offers or sales of any security into, within, or from the State of Alabama.

Entered at Montgomery, Alabama, this 10th day of _____, 2003.



ALABAMA SECURITIES COMMISSION
770 Washington Street, Suite 570
Montgomery, Alabama 36130-4700
BY:


JOSEPH P. BORG
Director

# ATTACHMENT 2

FILED

2008 APR 19 AM 11:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

05 APR 18 PM 5: 33

U.S. DISTRICT COURT
N.D. OF ALABAMA

CV-05-TMP-0814-S

| | |
|---|---|
| TERRY HARRIS, DOROTHY WATFORD, and the class of independent representatives in Networker 2000.Com, Inc. and Wealth Builders International, | ) ) ) ) |
| PLAINTIFFS, | ) ) CASE NO.: |
| V. | ) ) |
| JOSEPH BORG, individually and in his capacity, as Commissioner of the Alabama Securities Commission, | ) JURY TRIAL DEMANDED ) ) ) |
| DEFENDANT. | ) ) ) |

**COMPLAINT**

**I.    JURISDICTION**

1. This suit is a suit for race discrimination authorized and instituted pursuant to the Civil Rights Act of 1871, 42 U.S.C. Section 1983 and the Fifth and Fourteenth Amendments to the United State Constitution.  The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by statutes, and 42 U.S.C. Section 1983, and the Fifth and Fourteenth Amendments of the United State Constitution, providing for injunctive, damages and other relief for violations of rights secured therein. Further, the jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 2201 and 2202.

2. The principal residents of the named Plaintiffs and the principal place of business of Networker 2000.com, Inc., Wealth Builders International and Infinity 2000 is Jefferson County, Alabama.  The property taken by Defendant was located in Jefferson County, Alabama.

**EXHIBIT**

**2**

## II. PARTIES

3. Plaintiff, Terry Harris, is an African-American citizen of the United States, and is the President and CEO of Networker 2000.com, Inc. and said plaintiff had an interest in Wealth Builder International and Infinity 2000.

4. Plaintiff, Dorothy Watford, is an African-American citizen of the United States, was an independent representative of Networker 2000.com, Inc. and had and interest in Wealth Builders International and Infinity 2000.

5. Plaintiffs aver that the class they represent is so numerous that joinder of all members is impractible.

6. There are questions of law or fact common to members of the class.

7. The claims of the representative party are typical of the claims of the class.

8. The named plaintiffs will fairly and adequately protect the interest of the class.

9. The defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.  Rule 23(b)(2).

10. The questions of law or fact common to members of the class predominate over any questions effecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, herein.

11. Defendant, Joseph Borg, is Commissioner of Alabama Securities Commission.  The defendant is also a person subject to suit under the provisions of the Civil Rights Act of 1871, 42 USC 1983, and the Fifth and Fourteenth Amendments of the Constitution of the United States.

## III. CAUSES OF ACTION

### COUNT I:

12. The plaintiffs re-allege and incorporates by reference paragraphs 1-11 above with the same force and effect as if fully set out in specific detail herein below.

13. On or about April 17, 2003, Defendant, Joseph Borg, individually, and in its capacity as Commissioner of the Alabama Securities Commission issued a Cease and Desist Order and caused Plaintiff, Terry Harris, to send a letter to Charles Schwab, Incorporated to liquidate the stock and option positions in Wealth Builders International account #8172-3879.

14. On or about April 18, 2003, as a result of said Cease and Desist Order, Defendant, Joseph Borg, individually, and in its capacity as Commissioner of the Alabama Securities Commission, ordered and caused Plaintiff, Terry Harris, in its capacity as President and CEO of Networker 2000.com, Inc. to liquidate all stock and option positions held at Charles Schwab, Incorporated in the Infinity 2000 account, #4628-5537.

15. As a result of said Cease and Desist Order and Order to Liquidate said accounts, Plaintiffs and the class represented by Plaintiffs suffered lost of their interest in said accounts.

16. Plaintiffs aver that the liquidation of said accounts were done at substantial lost and amounted to a taking of their property.

17. Plaintiffs assert that the Cease and Desist Order and the Order to Liquidate violated the Civil Rights Act of 1877, 42 USC Section 1983, and the Fifth and Fourteenth Amendments of the United States Constitution by violating Plaintiffs clearly established rights to have a procedural due process hearing before the taking of their property.

## IV. PRAYER FOR RELIEF:

Wherefore plaintiffs respectfully pray that this court take jurisdiction of this action and after trial:

1. Grant Plaintiffs and the class they represent a declaratory judgement holding that the actions of the defendant described herein above violated and continue to violate the rights of the plaintiff and the class he represents as guaranteed by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fifth and Fourteenth Amendments of the United States Constitution.

2. Grant plaintiffs and the class they represent a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate the Civil Rights Act of 1871, 42 U.S.C. Section 1983 and the Fifth and Fourteenth Amendments of the United States Constitution.

3. Enter an order requiring the defendant to make the plaintiffs and the class they represent whole by awarding compensatory damages (including mental anguish damages), punitive damages, costs, attorneys fees and expenses.

Respectfully submitted,

Terry Harris

Dorothy Watford

**Plaintiff's Address**
Terry Harris
Dorothy Watford
8315-E 1st Avenue, North
Birmingham, Alabama 35206

**Defendant's Address**
Joseph Borg
Alabama Securities Commission
770 Washington Avenue
Montgomery, AL 36104

# ATTACHMENT 3



**BERKOWITZ LEFKOVITS ISOM & KUSHNER**

A PROFESSIONAL CORPORATION

ANDREW R. CHAMBLESS
ATTORNEY AT LAW
DIRECT DIAL NO.: (205) 250-8314
E-MAIL: ACHAMBLESS@BLK.COM
WEBSITE: WWW.BLK.COM

April 15, 2003

<u>VIA FACSIMILE</u>
<u>AND FIRST-CLASS MAIL</u>

Stephen Murphy, Esq.
Charles Schwab & Co., Inc.
101 Montgomery Street
MS: 101 Mont-23-246
San Francisco, CA 94104

Re:    Wealth Builders International Investment Club
        Account Number: 8172-3979

Dear Steve:

In accordance with the liquidation procedures detailed in the letter from the Alabama Securities Commission to Warren Dreher dated April 1 (the "Liquidation Plan") and pursuant to the Letter of Authorization from Terry Harris enclosed herewith, Charles Schwab & Co., Inc. is hereby requested, on behalf of Mr. Harris, Networker2000, Inc. and Wealth Builders International, to liquidate at market on Thursday, April 17, 2003, during the opening of the market day, all stock and option positions in the above-referenced account.

The Liquidation Plan provides that the Alabama Securities Commission must approve the liquidation of each position in the Wealth Builders account. A space has been provided below for Commission approval.

We appreciate your assistance in execution of the Liquidation Plan.

Sincerely,

*Andrew Chambless*

ANDREW R. CHAMBLESS

ARC/ms
Enclosure
cc:    Mr. John M. Foley
        Mr. Terry Harris

_____

EXECUTION OF THE ABOVE REQUESTED TRANSACTIONS IS HEREBY APPROVED
BY THE ALABAMA SECURITIES COMMISSION.

Name: *John M Foley*                    Date: *4/16/03*
Title: *Manager of Investigations*      Tel. No.: *334/242-2383*

EXHIBIT
3

577231v1
038093-000001

SOUTHTRUST TOWER · 420 20TH STREET NORTH, SUITE 1600 · BIRMINGHAM, ALABAMA 35203-5202 · TELEPHONE: (205) 328-0480 · FAX: (205) 322-8007

# ATTACHMENT 4

# LETTER OF AUTHORIZATION

April 15, 2003

To:   Charles Schwab
From:  Terry Harris, President & CEO/Networker2000.com

To whom it may concern:

I, Terry Harris, President & CEO of Networker2000.com do hereby authorize Charles Schwab to liquidate all stock and option positions in the Wealth Builders International account, 8172-3879, at market price on Thursday, April 17, 2003 during the opening of the market day, around 9:30 AM EST

If you have any questions concerning the liquidation of these positions call me at (205) 836-2910.

Terry Harris

President & CEO/Networker2000.com

**EXHIBIT**

4

# ATTACHMENT 5

*charles* SCHWAB

WRITER'S DIRECT DIAL
(415) 636-3763
WRITER'S FACSIMILE
(415) 636-5235

Office of Corporate Counsel
101 Montgomery Street  San Francisco  CA 94104
tel (415) 627 7000

January 17, 2003

**VIA UPS**

Terry Harris
H. Van Barringer
Wealth Builders International
107 David Green Rd. Suite B
Hoover, AL 35244

RE:     **Unauthorized Use of Charles Schwab & Co.'s Name**

Dear Sirs:

It has recently come to the attention of Charles Schwab & Co. ("Schwab") that Schwab's name is used to endorse your group's investment services in seminars given by representatives of Wealthbuilders International. We are also informed that you may be using Schwab's name in printed materials distributed at your seminars.

The unauthorized use of Schwab's name in presentations and printed materials clearly violates the Schwab trademark and trade name, which are the exclusive property of The Charles Schwab Corporation, and its subsidiaries. These marks are registered trademarks of our company and, as such, are protected by intellectual property laws. Your use of the Schwab trademark without our express permission gives rise to numerous state and federal violations. In addition, this use erroneously indicates an affiliation with Schwab which is misleading to those who attend your seminars. Therefore, Schwab demands that you immediately cease using any form of the Schwab trademarks and that you remove all references to Schwab from your printed materials.

Furthermore, Schwab is exercising its right, pursuant to the Account Agreement, to close your Schwab Account numbers 8172-3979 and related accounts 3224-7239, 4628-5537, 8173-0979, 8673-7241 effective **January 31, 2003**.

105284-1

**EXHIBIT**

5

Charles Schwab & Co. Inc. Member SIPC / New York Stock Exchange and Other Principal Stock and Options Exchanges.

RECEIVED TIME     FEB. 13.     6:54PM          PRINT TIME     FEB. 13.     7:02PM

Terry Harris
H. Van Barringer
January 17, 2003
Page 2

*charles* SCHWAB

In order to facilitate the closing process, we ask that you meet the deadlines set forth below. Effective January 31, no new account purchases of any kind will be permitted. You will only be permitted to liquidate existing positions in each of the accounts. All account assets, including any cash, stock and mutual fund holdings, must be transferred to another institution or withdrawn from your Schwab account on or before February 17, 2003. All normal Schwab fees and charges will apply.

If any assets remain in your account after February 17, 2003, Schwab will mail a check for the cash and money market holdings to the address of record for the account. For assets that can be issued to you in certificate form, a certificate (registered as the Schwab account is registered) will be mailed to the address of record for the account. Schwab will charge a $50.00 fee for each certificate issued. Finally, for assets that cannot be issued in certificate form, Schwab reserves the right to sell those positions and mail a check for the sale proceeds (less commissions and other applicable charges) to the address of record for the account.

Thank you for your attention to this matter.

Sincerely yours,

Steve Murphy
Corporate Counsel

cc:    Terry Harris
       2909 Highland Ave.
       Apartment 307
       Birmingham, AL  35205

105284-1

Charles Schwab & Co. Inc. Member SIPC / New York Stock Exchange and Other Principal Stock and Options Exchanges.

RECEIVED TIME    FEB.13.    6:54PM       PRINT TIME    FEB.13.    7:02PM

# ATTACHMENT 6

# AGREEMENT REGARDING
# WEALTH BUILDERS INTERNATIONAL FUNDS

This agreement made this _30_ day of _September_, 2003, between the Alabama Securities Commission (hereinafter referred to as the "ASC" or the "Commission"), Wealth Builders International (hereafter referred to as "WBI"), Networker2000.com, Inc. and Terry Harris, regarding the transmittal of funds to investors of WBI.

      1.     It is agreed and understood between the parties that, between March 13, 2003 and July 14, 2003, a series of deposits were made into an escrow account controlled by the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz (formerly known as Berkowitz, Lefkovitz, Isom & Kushner and hereinafter referred to as "Baker, Donelson"). These funds were deposited into an interest bearing account controlled by Baker, Donelson with a total deposit of $2,527,776.50. These monies represented investor funds deposited by various investors into a program run and managed by WBI. As of June 25, 2003, the law firm of Baker, Donelson withdrew from its representation of WBI and Terry Harris, but has retained possession of the investor funds, which have been deposited into an interest bearing account, the balance on July 31, 2003 being $2,537,547.96. Baker, Donelson agreed to maintain custody and control of these funds pending joint instructions for disbursement from the Commission, WBI, and Terry Harris.

      2.     Terry Harris and WBI have provided to the Commission what they have represented to be a full and complete listing of all investors into the WBI program and the amount each invested. A true and correct copy of this listing is attached hereto as Exhibit

B SBC 601224 v2
038092-000001 09/30/2003

**EXHIBIT**

6

"A" and contains the names, addresses, and total investment amount of each investor. Terry Harris and WBI agree that each of these investors is entitled to receive a full refund of their investment in WBI; however, WBI and Terry Harris acknowledge that they do not have the funds available to make full refunds to each investor. The Commission has calculated a pro rata return to each of these investors, based upon the amount represented on Exhibit "A" to have been invested by the investor and the total amount of the funds held by the Baker, Donelson law firm. A true and correct copy of the agreed upon, pro rata refund to each investor is attached hereto as Exhibit "B". In making these calculations, the Commission has relied entirely upon the accuracy of the information contained in Exhibit "A".

3.    Upon execution of this agreement by all parties hereto, it is agreed that Terry Harris, WBI and Networker2000.com, Inc., including any of their officers or agents, waive any claim to the funds held in escrow by Baker, Donelson. Further, it is agreed that these funds will be transferred to the Commission and that the Commission will issue reimbursement checks to each investor, based upon the information contained in Exhibit "A" and Exhibit "B" attached hereto. It is understood and agreed by all parties that these reimbursement checks will not result in a total repayment to the investor but only a partial reimbursement.

4.    It is agreed that the provisions of this Agreement are strictly limited to the funds presently held in escrow by Baker, Donelson and have no impact on any pending or future administrative, civil or criminal matter by the Commission, or any other agency or individual.

2

5.      Nothing herein shall be construed to bind or otherwise prejudice any rights any investor may have with regard to its relationship with Terry Harris or WBI.

NETWORKER2000.COM, INC.                WEALTH BUILDERS INTERNATIONAL

By: _____          By: _____
Its: _President + CEO_____          Its: _Founder_____


TERRY HARRIS                           ALABAMA SECURITIES COMMISSION

_____          By: _____
                                       Its: _Director_____

B SBC 601224 v2
038092-000001  09/30/2003