IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERRY HARRIS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   CASE NO: 2:05CV1083-WKW-TFM |
| JOSEPH BORG, | ) |
| | ) |
|    Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT JOSEPH BORG'S MEMORANDUM OF
<u>LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

**COMES NOW** Defendant Joseph Borg and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Court to grant Defendant's Motion for Summary Judgment filed contemporaneously herewith. In support of this motion, Defendant states as follows:

      **I.**    **STATEMENT OF FACTS**

The Plaintiff was investigated for violation of Alabama securities laws by the Alabama Securities Commission ("ASC") of which the Defendant is Director [not a "Commissioner" as he is labeled in Plaintiff's Complaint]. While he was under investigation, and with the assistance of his attorneys, Plaintiff Harris caused certain securities, which were being held in California, to be liquidated, returning the proceeds of that liquidation to the investors as a partial refund. Harris' letter authorizing the liquidation [Ex. One Borg Aff. Attachment 4] and Harris' attorney's letter ordering the liquidation [Ex. One Borg Aff. Attachment 3] are both dated April 15, 2003. Later, on June 10, 2003, the ASC issued a cease and desist order which required the Plaintiff to cease violating the Alabama securities laws. [Ex. One Borg Aff. Attachment 1] Defendant Borg signed

1

the order (as Director of ASC), but the cease and desist order did not require any liquidation of stock or options, and it came almost two months after the Plaintiff and his attorney ordered the liquidation. Mr. Harris and his attorney apparently ordered the liquidation at what they believed to be "the most opportune time" as ASC authorized them to do [Ex. Two Foley Aff. Attachment 9 ¶ 1]  Thus, Plaintiff Harris took these actions on his own accord, and neither the Defendant nor ASC ordered him to do so. Presumably, Mr. Harris liquidated these investments and made the partial refund because, as he told Mr. Foley, "…I do not plan to intentionally operate on the other side of the law [Ex. Two Foley Aff. Attachment 7 ¶ 1]."  The Plaintiff will probably irrationally respond, "Oh, yes they did order me to liquidate," but as Plaintiff, he has the burden of proof and "[i]n meeting this burden the nonmoving party 'must do more than simply show that there is a metaphysical doubt as to the material facts.'" *Dubisar-Dewberry v. Dist. Attorney's Office,* 927 F. Supp. 1479, 1481-82 (M.D. Ala. 1996) (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). This is especially the case where, as here, any metaphysical assertions fly in the face of compelling proof to the contrary.  For example, Plaintiff may also state that " [t]his is a suit for race discrimination [Ex. One Borg Aff. Attachment 2 ¶ 1]," but he has to do more than just claim it, See *infra*. He may claim that the ASC's letter to Schwab [Ex. Two Foley Aff. Attachment 10] was an order to Harris to liquidate, but it was from Senior Special Agent Foley, not Defendant Borg, and the letter speaks for itself.  A simple reading of it shows such a claim to be nonsensical. It is not from Mr. Borg, not to Mr. Harris and it does not order liquidation. If a Plaintiff bases his claims on an assertion that "Old Glory" has tangerine stripes, he has to do more that just continue to assert that in the face of color pictures showing to the contrary.

Mr. Harris took these steps to liquidate (and effectuate a partial return to the investors) to try to avoid prosecution for violation of Alabama's securities laws, violations that cost his investors losses of about $1.6 million dollars which he now bizarrely asks to recover from Mr. Borg. He asks this despite the fact that, in his unsuccessful attempt to amend his complaint to add these investors as Plaintiffs (itself an attempt to undo the Court's denial of his class action claim), Mr. Harris asserts that these losses were those of the investors (whom he describes as the real party in interest) and, thus, not his [Plaintiff's Brief in Support of Motion to Amend, Doc. 40 @ page 7].

His attempt to avoid prosecution was unsuccessful. It is undisputed that he was indicted in Jefferson and Montgomery Counties. He pled guilty to securities violations in Montgomery County and, then sought to withdraw his plea, arguing that he was improperly convicted. The Alabama Court of Criminal Appeals has determined that he should be able to withdraw that plea. That matter remains unresolved, but he has been re-indicted in Jefferson County on the charges that were dismissed because of his guilty plea in Montgomery.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). The party asking for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, @ 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Here, the Defendant asks, "Where is the proof that I ordered Mr. Harris to liquidate? Where is the proof that he objected to the liquidation? Where is the proof that the liquidation caused, rather than stemmed, losses for the investors? Where is the proof that the Plaintiff suffered damages thereby?" There is no proof of any of these necessary elements.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.' " *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, supra.* A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.    ARGUMENT
**A.    THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE BASIS OF THE UNDISPUTABLE FACTS.**

The Plaintiff alleges, in his original complaint (the pleading to which he should be held based on the Court's denial of his motion to Amend [Doc. 44]), nothing of substance other than the fact that a cease and desist order signed by the Defendant allegedly caused him to liquidate certain securities. The cease and desist order in question was issued almost two months after the

liquidation, so the Plaintiff's allegations are self-disproving. Further, the Exhibits and Attachments accompanying Defendant's Motion for Summary Judgment conclusively show that Mr. Harris ordered the liquidation with the coordination and supervision of his attorney. The following affidavits and attachments support Defendant's contentions:

|  | Exhibit One – Affidavit of Joseph P. Borg |
|---|---|
| Attachment 1 | Cease and Desist Order |
| Attachment 2 | Original Complaint |
| Attachment 3 | Letter dated 4/15/03 from Chambless to Murphy at Schwab instructing liquidation |
| Attachment 4 | Letter dated 4/15/03 from Harris authorizing liquidation |
| Attachment 5 | Letter dated 1/17/03 from Schwab to Harris closing accounts |
| Attachment 6 | Agreement regarding Wealth Builders International Funds |
| | |
|  | Exhibit Two - Affidavit of John M. Foley |
| Attachment 7 | Fax dated 3/20/03 from Harris to Foley regarding rescission |
| Attachment 8 | Fax dated 3/20/03 from Chambless regarding Harris' rescission |
| Attachment 9 | Letter dated 4/1/03 from Foley to Chambless confirming receipt of both letters regarding rescission |
| Attachment 10 | Letter dated 4/1/03 from Foley to Schwab memorializing agreements reach with Chambless as Harris's attorney |
| Attachment 11 | Order on which is written "Accepted as Truth" etc. |
| Attachment 12 | Agreement Regarding disposition of Wealth Builders International Funds |

There are no issues of material facts upon which the Plaintiff could prevail, and no reasonable jury could find in his favor.

**A.    ELEVENTH AMENDMENT IMMUNITY PROTECTS STATE ACTORS AND ITS AGENCIES FROM CLAIMS UNDER SECTION 1983.**

**ALL OF THE FOLLOWING IMMUNITY DEFENSES ARE IN ADDITION TO THE DEFENSES THAT ARISE FROM THE FACT THAT PLAINTIFF CANNOT MEET HIS BURDEN OF PROOF, CANNOT SUPPORT ANY OF THE FACTUAL CLAIMS MADE IN HIS COMPLAINT, AND CANNOT COUNTER DEFENDANT'S PROOF TO THE CONTRARY.**

The Eleventh Amendment prohibits Plaintiff's § 1983 action seeking compensatory and punitive damages against Joseph Borg in his official capacity. *See Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1310-11 (M.D. Ala. 2000); *Wright v. Butts,* 953 F.Supp. 1352, 1358 (M.D. Ala.

1996). "Lawsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir. 1990). Where a plaintiff asks for monetary damages from a state employee in his or her official capacity, "the state is considered the real party in interest because an award of damages would be paid by the state." *Id.; see also Wright,* 953 F. Supp. at 1358. The Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." *See Edelman v. Jordan*, 415 U.S. 659, 663 (1974). This rule applies not only in suits against the state but also against a "state agency or instrumentality." *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). The Courts have determined that this rule of immunity applies regardless of whether the action is instituted against a state, a state agency or instrumentality, or a state official. *Id*. Neither the state nor Congress has waived Eleventh Amendment immunity under § 1983. *Wright,* 953 F. Supp. at 1358. Based on these principles, the court should find that Plaintiff's § 1983 claims for compensatory and punitive damages against Joseph Borg in his official capacity are due to be dismissed.[1]

**B.    QUALIFIED IMMUNITY PROTECTS JOSEPH BORG FROM INDIVIDUAL LIABILITY UNDER SECTION 1983.**

When a government official is sued in his individual capacity for money damages based on alleged civil rights violations, he may posit an affirmative defense of qualified immunity.[2]

---

[1] When federal rights are asserted against state employees sued in their official capacities, the Eleventh Amendment prohibits claims for retrospective monetary relief (i.e., compensatory and punitive damages) paid from the state treasury, but not prospective equitable relief (i.e., declaratory and injunctive relief). *See Ex parte Young,* 209 U.S. 123 (1908) (holding that a plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a state agency directly even though in reality the suit is against the state); *Wright*, 953 F.Supp. at 1358-1359. Based on *Ex parte Young,* as discussed in *Wright,* Plaintiff's § 1983 claims seeking injunctive relief against Joseph Borg in his official capacity are conceivably proper, but fail because his factual allegations do not support relief of any kind. Defendant disputes that Plaintiff has made out a *prima facie* case for a § 1983 claim against Defendant in his official capacity.

[2]    To the extent that Plaintiff's § 1983 claims seeking injunctive relief apply to Joseph Borg in his individual

*See Swint v. City of Wadley, Ala.,* 51 F.3d 988, 994 (11th Cir. 1995). The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow,* 457 U.S. at 818; *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir. 1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. First, the government official must demonstrate that "he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred." *Rich,* 841 F.2d at 1563-64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983)). As explained by the Eleventh Circuit,

> The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an "untenable" tautology. Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.

*Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir. 1998) (internal citations omitted). Plaintiff cannot seriously contest the fact that Joseph Borg was acting within his discretionary

---

capacity, which is not apparent on the face of Plaintiff's Complaint, they should be dismissed based on qualified immunity.

7

authority when the ASC issued a cease and desist order instructing Plaintiff to cease violating Alabama securities laws [See, Ex. One Borg Aff. ¶ 10].

Second, if the government official satisfies his burden, the plaintiff must show that the official's actions "violated clearly established constitutional law." *Id.* Under this prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit, and the district courts of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n.6 (11th Cir. 1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n.32 (11th Cir. 1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir. 1994), and a plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir. 1994); *see also Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right"). Absent a controlling and factually on-point case, a plaintiff can overcome qualified immunity only when "the official's conduct lies so obviously at the very core" of what the constitutional provision forbids "that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997) (citing *United States v. Lanier,* 520 U.S. 259, 269 (1997)); *see also Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1313 (M.D. Ala. 2000).

In the present case, Plaintiff has failed to come forward with any evidence of any constitutional deprivation. Plaintiff cannot point to a controlling or factually similar case because Plaintiff has no evidence that Joseph Borg committed a constitutional violation. Thus,

Plaintiff has failed to make a *prima facie* case for § 1983 liability against Defendant in his individual capacity.

In sum, Joseph Borg is protected by qualified immunity because Plaintiff has offered no evidence that he violated clearly established constitutional law. Additionally, Plaintiff's allegations against Defendant in his individual capacity are inherently inadequate since they rest solely on the fact that Joseph Borg, acting as the Commissioner of the ASC, issued a cease and desist order. *See* Ex. Two Borg Aff. Attachment 2 ¶ 13. Plaintiff has made no allegations of any conduct that Defendant undertook in an individual capacity, and the sole action complained of in this lawsuit was done by ASC, not Joseph Borg. Thus, qualified immunity also bars Plaintiff's suit against Joseph Borg in his individual capacity.

C. **IN ADDITION, PLAINTIFF HAS FAILED TO MAKE A *PRIMA FACIE* CASE BASED ON THE EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AND FIFTH AMENDMENTS OF THE CONSTITUTION.**

In addition to his § 1983 claims, Plaintiff has also failed to make a *prima facie* case based on the equal protection clauses of the Fourteenth and Fifth Amendments of the Constitution. Specifically, to establish an equal protection claim, a plaintiff must show that he is similarly situated to others who received more favorable treatment, and that his adverse treatment was based on some constitutionally protected interest such as race. *See Jones v. Ray,* 279 F.3d 944, 947 (11th Cir. 2001) (finding that elements of equal protection claim include differential treatment from others similarly situated, and intentional discrimination). That said, the Supreme Court has recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *but see Hicks v. Jackson County Com'n,* 374 F.Supp.2d 1084,

9

1094 (N.D. Ala. 2005) (advocating caution in applying *Olech* because "unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors").  In *Olech'* s wake, then, a plaintiff raising an equal protection claim must still show intentional differences in treatment from others similarly situated to him.  *See Jones,* 279 F.3d at 947 (dismissing equal protection claim when even liberal interpretation of complaint did not reveal any factual basis for equal protection claim); *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1367-69 (11th Cir. 1998) (dismissing equal protection claims where complaint failed to allege sufficiently that defendant treated plaintiff differently than similarly situated persons).  *Anderson v. Greene*, 2005 WL 3058095 *5 (S.D. Ala. 2005) (granting defendant's motion to dismiss plaintiff's Fourteenth Amendment equal protection claim due to absence of factual support).

With regards to Plaintiff's § 1983 Fourteenth Amendment equal protection claim, Plaintiff alleged that Joseph Borg violated the Constitution "by violating Plaintiff's clearly established rights to have a procedural due process hearing before the taking of their property." *See* Ex. One Borg Aff. Attachment 2 ¶ 17.  A review of the Complaint reveals that Plaintiff's equal protection allegations are plainly lacking.  The Plaintiff has not indicated that anyone is similarly situated to him, much less identified those persons.  "Who committed your offenses, Mr. Harris, and did not earn, at least, a cease and desist order as a result?"  Nor has Mr. Harris explained the manner in which he believes that he was subjected to disparate treatment (*e.g.,* because of his race).  Not only are Plaintiff's allegations lacking, but Plaintiff has not come forward with a single piece of evidence of disparate treatment.   Plaintiff cannot point to a similarly situated individual who was treated more favorably as regards cease and desist orders

10

or liquidation because none exist.  Thus, Plaintiff fails to make a *prima facie* case based on the equal protection clause of the Fourteenth Amendment.

The Plaintiff's claims should also be dismissed to the extent that they allege violations of Fifth Amendment due process rights. The Fifth Amendment's due process clause does not extend to state and local governments, but is instead confined to the federal government.  To the extent that Plaintiff is seeking to bring a separate, distinct Fifth Amendment due process claim against Defendant, Plaintiff's claims are due to be dismissed.  *See Riley v. Camp,* 130 F.3d 958, 972 n. 19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here - the acts complained of were committed by state rather than federal officials."); *Dowdell v. Chapman,* 930 F. Supp. 533, 542 (M.D. Ala. 1996) ("The Fifth Amendment's Due Process Clause applies only to the federal government.").  Thus, Plaintiff fails to make a *prima facie* case based on the equal protection clause of the Fifth Amendment.

**WHEREFORE, PREMISES CONSIDERED**, because there are no genuine issues of fact, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Joseph Borg respectfully moves this Court to dismiss the Plaintiff's claims with prejudice and grant Defendant's Motion for Summary Judgment.

        s/Bruce J. Downey, III
        **BRUCE J. DOWNEY, III**
        **ASB-9205-W86B**
        *ATTORNEY FOR DEFENDANT JOSEPH P. BORG, ESQ.*

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama  36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888

11

Jane Brannan, Esq.
Alabama Securities Commission
770 Washington Ave., Ste. 570
Montgomery, AL  36130-4700
Telephone:    (334) 353-4690

## CERTIFICATE OF SERVICE

    I hereby certify that on this the 30th day of May, 2007, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Henry L. Penick, Esq.
H. L. Penick & Associates, P.C.
P O Box 967
Birmingham, AL  35201-0967

                s/Bruce J. Downey, III
                **OF COUNSEL**