## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TERRY HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.: 2:05-CV-1083-WKW** |
| | ) | |
| **JOSEPH BORG,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the plaintiff and responds to defendant's Motion for Summary Judgment as follows:

### I.  STATEMENT OF FACTS

Defendant is not entitled to summary judgment and disputed issues of material fact exist.  Harris, African American, is the owner of Networker 2000.com ("N2K"), Wealth Builders International Investment Club, ("WBI"), was a part of N2K, but not controlled by Harris (Exhibit 1, Harris Depo. p. 123-24.

In late 2002, Ruben Redd, a special agent with the Alabama Securities Commission ("ASC"), investigated plaintiff's business, N2K, and plaintiff's role in WBI.  On April 15, 2003, the ASC instructed Harris to send a letter to Charles Schwab, Inc., a stockbroker, to liquidate all stock and options positions in the WBI account #3172-3979, at market price on Thursday, April 17, 2003.  (Exhibit 3 and 1, Harris depo., pp. 135-142).  On June 10, 2003, the Alabama

Securities Commission, by its Director, Joseph Borg, issued a Cease and Desist Order against Plaintiff, Terry Harris and Wealth Builders International Investment Club ("WBI") and others. (Exhibit 4).  On September 30, 2003, the ASC took possession of $2,527,776.50, which represented the proceeds of the liquidation of the Wealth Builders' accounts with Schwab. (Exhibit 4).  Prior to receipt of the funds by the ASC, the ASC acknowledged Harris' request for a formal hearing (Exhibit 6).  Harris was not given a hearing.  Plaintiffs filed this action alleging that the liquidation of the Wealth Builders accounts and the seizure of funds, without a formal hearing, constituted a taking of property without procedural due process, prohibited by the Fifth and Fourteenth Amendment of the U.S. Constitution and a violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

In Defendant's motion, Defendant asserts several facts incorrectly.  First, Defendant alleges that Plaintiff Harris voluntarily caused certain stocks and options to be liquidated.  Under a "Liquidation Plan," executed on April 17, 2003, the ASC ordered that all stock and option positions in the Charles Schwab account be liquidated.  Prior to this liquidation, ASC Manager of Investigations, John M. Foley, on March 27, 2003, discussed with Schwab "the ASC's plan for liquidating positions held by Wealth Builders International, Inc. (Exhibit 7).  Subsequently, the funds were transferred into an interest bearing account under the strict control of Harris' attorney at the law firm Berkowitz, Lefkovitz, Isom & Kushner, located in Birmingham, Alabama.  The decision to liquidate was involuntary because the ASC froze the account and left Plaintiff Harris with no choice but to comply with the "Liquidation Plan." (Exhibit 1, p. 82-86).

The Defendant further alleges that the ASC, not the Defendant, issued the June 10, 2005 Cease and Desist Order.  The ASC is a state agency consisting of live individuals.  The ASC

only acts through the actions of those individuals, hence the concept of official immunity.  See

generally *Carr v. City of Florence,* 916 F. 2d 1521, 1525 (11th Cir 1990)  In his capacity as

Commissioner of the ASC, Defendant Borg did, in fact, sign and issue the Cease and Desist

Order.

## II.  **Plaintiff's Request for Injunctive Relief is Not Barred by Official Capacity Immunity.**

In plaintiff's original Complaint, plaintiff sought as grounds for relief:

> 2) Grant plaintiff and the class they represent a permanent
> injunction enjoining the defendant, its agents, successors,
> employees, attorneys and those acting in concert with the
> defendant and at the defendant's request from continuing to violate
> the Civil Rights Act of 1871 42 U.S.C. §1983 and the Fifth and
> Fourteenth Amendments of the United States Constitution.[1]

In *Carr v. City of Florence,* 916 Fed. 2d 1521, 1525 (11th Cir. 1990), the Eleventh Circuit

held that government officials can be sued in their official capacity for injunctive relief.  In

plaintiff's Complaint, he complained that:

> 13.  On or about April 17, 2003, defendant, Joseph Borg,
> individually, and its capacity as Commissioner of the Alabama
> Securities Commission issued a Cease and Desist Order and
> caused plaintiff, Terry Harris, to send a letter to Charles Schwab,
> Incorporated to liquidate the stock and option positions in Wealth
> Builders International account #8172-3879.

> 14.  On or about April 18, 2003, as a result of said Cease and
> Desist Order, defendant, Joseph Borg, individually, and in its
> capacity as Commissioner of the Alabama Securities Commission,
> ordered and caused plaintiff, Terry Harris, in its capacity as
> President and CEO of Networker 2000.com, Inc. to liquidate all
> stock and option positions held at Charles Schwab, Incorporated in
> the Infinity 2000 account #4628-5537.

---

[1]Plaintiff's request for class certification was denied.

3

15.  As a result of said Cease and Desist Order and Order to
Liquidate said accounts, plaintiffs and the class represented by
plaintiffs suffered loss of their interest in said accounts.

16.  Plaintiffs aver that the liquidation of said accounts were done
at substantial loss and amounted to a taking of property.

17.  Plaintiffs assert that the Cease and Desist Order and the Order
to Liquidate violated the Civil Rights Act of 1877, 42 U.S.C.
§1983, and the Fifth and Fourteenth Amendments of the United
States Constitution by violating plaintiff's clearly established
rights to have a procedural due process hearing before the taking
of their property.

It is clear that the plaintiff is seeking both injunctive relief and declaratory judgment.  In

*Carr*, Supra, the Eleventh Circuit Court of Appeals affirmed Alabama's law that "an executive

officer of the State of Alabama. . . is immune from lawsuit under the State Constitution, except

(1) for injunctive actions to compel him to perform his duties, (2) to compel him to perform

ministerial acts, (3) to enjoin him from enforcing him from enforcing unconstitutional laws, (4)

to enjoin him from acting in bad faith, fraudulently, beyond his authority or under mistaken

interpretation of the law or (5) to seek construction of a statute under the declaratory judgment

act if he is a necessary party for the construction of the statute."  916 Fed. 2d at 1525.

### III.  The ASC Initiated its Plan to Liquidate Before Harris' Authorization to

**Liquidate**        Harris complains that the Borg, as Director of the ASC, not only issued the Cease

and Desist Order but also "ordered plaintiff, Terry Harris, to send a letter to Charles Schwab,

Incorporated, to liquidate the stock and option positions in Wealth Builders International

Account #8172-33879."  Defendant is correct that the Cease and Desist Order came after the

liquidation on April 17, 2003.  On the other hand, the order or plan to Liquidate preceded the

liquidation of the accounts.  The accounts were liquidated on April 17, 2003, by letter from

4

Harris (Exhibit 3). Nearly a month prior to Harris' authorization to liquidate, John Foley, ASC's

Manager of Investigations, on March 27, 2003, had a conversation with Warren Dreher, Esq., of

Charles Schwab Company, Inc, in which he told Mr. Dreher "as per our telephone discussion of

March 27, 2003, the following outlines the Alabama Securities Commission's plan for

liquidating the positions held by Wealth Builders International, Inc." (Exhibit 7). It was clear

that Mr. Foley acting on behalf of the ASC, discussed with Schwab the liquidation of Wealth

Builders International, Inc., prior to Harris' authorization.

      The Commissioner's plan for liquidation was materially different from the plan suggested

by Harris' memo to the ASC on March 20, 2003, wherein Harris proposed that "I am seeking to

return all of the investor's money by transferring it into their own brokerage account at

OptionsXpress. Around 1100 of these new OptionsXpress accounts had already been set up in

anticipation of the transfer into their account. The reason the funds have not been transferred yet

is because is the Commission put a block on the transfer from Schwab to OptionsXpress."

(Exhibit 8). On the other hand, the Commissioner's plan called for total liquidation of all funds

to be placed in a trust account, which was later transferred to the Commission. (Exhibit 7).

      Mr. Harris' contention that the Commission "put a block on the transfer of Schwab to

OptionsXpress," is consistent with Mr. Harris' testimony that the Commissioner "froze" the

accounts to prevent trades. (Exhibit 1, Depo of Harris, p 82-86). Additionally, Joseph Borg

wrote WBI investors on June 19, 2003, wherein he informed the investors, "as you are now

aware, the Alabama Securities Commission has frozen the funds of Wealth Builders

International ("WBI") due to, among other reasons, discrepancies pertaining to the required

registration as Securities Agents, Dealers of Mr. Harris, Mr. Berringer, Ms. Toney, and Wealth

Builders International, Inc., with the Alabama Securities Commission." (Exhibit 9).

> Q.  I am asking you, Mr. Harris, do you contend that there are any things that the Alabama Securities Commission did that prevented WBI from having full funds to make a full refund?
>
> A.  Well, when the money was frozen, if there were trades out there especially option trades that would expire if you don't get in and do something.  I mean, the way options work, they have an expiration date, and the closer they get toward the expiration date, they lose value.
>
> . . . . . . . . . .
>
> Q.  Mr. Harris, didn't the Alabama Securities Commission tell you that you could liquidate the options as you saw fit, so long as you didn't continue to invest in options?
>
> A.  I don't recall that.  The only thing I recall, through my attorney, Andrew Chambers, this is something that we had to do. The account was frozen.  Then there was discussion: These options are going down.  People are losing money.  What are they going to do?  Well, were going to have to talk with Alabama Securities Commission and see what they would let us do.  (Exhibit 1, p. 82-87).

It is clear that the Alabama Securities Commission froze the account with Schwab prior to Harris' April 15, 2003 authorization letter.  Foley's April 1, 2003 letter to Schwab regarding the ASC's Liquidation Plan is dated 17 days before Harris wrote the letter authorizing the liquidation.

The ASC had control over the very wording of Harris's April 15, 2003 letter of authorization to liquidate.  Attached hereto as Exhibit 10, is the original draft of Harris's letter to Charles Schwab.  The ASC would not approve the letter with the disclaimer.  Consequently the ASC required Harris to resubmit the authorization without the disclaimer (Compare Exhibit 2 and 10).

Although defendant claims that the actions taken herein were done by the Alabama Securities Commission and not by him, this is contrary to his deposition testimony wherein he indicated that the Commission meets once a quarter and then it is an occasion where he reports his actions rather than an occasion for the Commission to initiate actions. There is no evidence by the defendant that the Commission ever initiates enforcement actions.

> Q. Do they have to approve of what you are doing in the area of enforcement or is it just more of a reporting function that they pretty much nod their head and say OK, yes, that's fine?
>
> A. It's more of a reporting function, but the Commission gets regular reports as enforcement action happen. So if we were to take an action today or issue something today, they would get a report on each of the Commission's desk. There is a regular routine of communication.

(Exhibit 11, Depo of Borg, p. 13-14). It is clear from Borg's own testimony that he, as Director of the Commission, initiates enforcement action and not the ASC as argued in Defendants Motion for Summary Judgment. Borg testified, "The final decision is mine, whether to initiate civil or criminal enforcement action. (Exhibit 11, p. 15).

Borg does not deny that he signed, as Director of the ASC, the Cease and Desist Order. Although Borg claims that it is issued by the ASC, not by him, he offers is no testimony that the Commission met and determined to the issue of the Cease and Desist Order before it was issued.

According to Harris, the Cease and Desist Order was a memorialization of actions taken by the Commission. The deposits into and from the Wealth Builder's International Investment Club (WBI) account and the Infinity 2000 Investment Group and Investment Club ("Infinity") account had been liquidated in the April 17, 2003 liquidation. Harris was no longer trading stocks for WBI at the time the Commissioner issued its June 10, 2003 Cease and Desist Order.

Harris complains that this Cease and Desist Order was never made final as required by law

before the final taking and distribution of funds.

    The Cease and Desist Order is the only official Order signed personally by Borg.  Section

8-6-32 of the Code of Alabama (1975) provides the following:

**Party Aggrieved By Order Entitled to Hearing Before
Commission, Appeals from Action of Commission.**

    (a)  Any person agreed by an order issued under this article shall be entitled to a hearing
pursuant to the provisions of the Alabama Administrative Procedure Act.  Section 41-21-1 et
seq.  Pertaining to "contested cases," provides in part, if such a person, within twenty-eight days
after delivery of the Order, submits a written request for a hearing before the Commission.

    Section 41-22-16 Code of Alabama (1975) provides, in part, the following:

**Contested Cases: Final Order**.

    (a) The final order in a proceeding which affects substantial interests shall be in writing
and made a part of the record and include findings of fact and be in writing and made a part of
the record and include findings of fact and conclusions of law separately stated, and it shall be
required within thirty days:

· · · · · · · · · ·

    (d) The parties shall be notified either personally or by certified mail/return receipt
requested of any order and, unless waived, a copy of the Final Order shall be delivered or mailed
to each party or his attorney of record.  Provided . . . the notification of the following Final Order
subject to judicial review, together with a copy of the Final Order, shall be delivered either by
personal service as in civil actions or by certified mail, return receipt requested.

    It is clear that the law provides for a hearing upon request.  Harris and one other

respondent, Patricia Monroe Toney, timely made the request for a hearing on July 8, 2003.

(Exhibit 6). Harris desired a hearing because he had a meritorious defense to the charges of the

Commissioner.  The Cease and Desist Order charged that Harris "acted as Securities Agent

and/or Broker Dealers of WBI, N2K, Infinity, and N2K Investments by collecting funds from

investors for the purpose of investing with an expectation of receiving a profit, without benefit of

8

registration in violation of Section 8-6-3 (a) Code of Alabama 1975. (Exhibit 4, paragraph 23).

Said Code Section allows for an exemption if the Agent or Broker received no compensation.

See §8-6-11 (a)(14), Code of Alabama (1975). The Commissioner nowhere contends that Harris

received compensation. If Harris were permitted to prove this at the requested hearing, he would

have proved that the Commission and the Ceased and Desist Order signed by Borg caused a

wrongful seizure and taking of funds.

IV. **Borg Violated Harris Fourteenth Amendment Rights by Taking Without**
**Procedural Due Process**

Plaintiff alleges three Constitutional violations. First, the Plaintiff alleges that the

Defendant violated the Takings Clause and the Procedural Due Process clause of the 5th and 14th

Amendments to the Constitution. In addition, the Defendant violated the Equal Protection

clause.

1. Takings Clause:

It is clearly established by the plain language the Fifth and Fourteenth Amendment that

the government cannot take an individual's property without just compensation.

2. Procedural Due Process:

"To succeed on a procedural-due-process claim, as applied through § 1983, a plaintiff

must show, first, that he possesses a protected property or liberty interest, second, that a state or

federal actor has deprived him of that right, see *id*.; and, finally, that he has not been accorded a

hearing prior to his deprivation of that right, or that the hearing was fundamentally unfair."

*Shows v. Morgan*, 40 F.Supp.2d 1345, 1355 (M.D.Ala.,1999) (internal citations omitted).

It is clearly established under the Fifth and Fourteenth Amendment that notice and

hearing is required.  This right is codified in the Alabama Administrative Procedure Act.  §§ 41-22-12, 41-22-16, *Code of Alabama* (1975) and in the Alabama Securities Law §8-6-32 Code of Alabama (1975)..  As the Director of the ASC, the Defendant is charged at the very least with knowing Alabama administrative procedures and security laws enforcement procedure.

### VI.  Borg is not Entitled to Summary Judgment on Plaintiff Equal Protection Claim

With respect to equal protection, Harris has alleged in his original Complaint and his Amended Complaints that he is African American.  In his Affidavit (Exhibit 12), he has asserted that Herbert Van Barringer, a white male, was President of the Wealth Builders International Investment Club and a member of the core group, which decided which stocks and options to trade and did, in fact, trade those stocks and options in the Wealth Builders accounts, was not criminally prosecuted by the State Ex rel Alabama Securities Commission as was Harris.  Harris, the founder of Wealth Builders International Investment Club, has asserted that he was singled out because of his race, that of being an African-American.  Equal Protection under the law would require criminal prosecution of Barringer by Borg with equal zeal as he prosecuted Harris.  Although Barringer was investigated and mentioned in the Cease and Desist Order, no criminal prosecution was brought against  him.  (Exhibit 12).

The facts of this particular case and the basis for the claims are not complex.  Plaintiffs allege that the Defendant compelled them to liquidate account, froze accounts and took possession of funds from those accounts without a final hearing. In the Original and Amended Complaints, the Plaintiff sets forth the account numbers of the specific bank accounts involved.  Defendant alleges the approximate amount of financial losses that occurred as a result of the plaintiff's conduct as being $1,600,000.00.  Plaintiff was entitled to a hearing prior to the

freezing and taking of funds.

**VII.  Borg is Not Entitled to Qualified Immunity**

To Plaintiffs' claims, Defendant has argued qualify immunity.  The seminal case in the

area of  qualified immunity is *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), which requires

"that government officials performing discretionary functions generally are shielded from

liability for civil damages insofar as there conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known."

In the case at bar, Defendant correctly recognizes that the test for qualified immunity is a

two- step, objective reasonableness analysis.  The first being whether "he was acting within the

scope of his discretion authority when the allegedly wrongful act occurred."  *Rich v. Dollar*, 841

F. 2d 1558, 1563-64, Citing *Zeigler v. Jackson*, 716 F. 2d 847, 849 (11th Cir. 1983).  Defendant

concedes this factor.  It is clear that when the ASC requested the liquidation of the accounts,

when Borg issued the Cease and Desist Order, and when the ASC took possession of the funds

of Weathbuilders, Borg was acting within the perimeter of his discretionary duties as the

Director of the Alabama Securities Commission.

 The second inquiry is whether the Defendant violated a clearly established constitutional

law.  "For a right to be 'clearly established,' previous case law must have developed it in a

concrete factual context so as to make it obvious to a reasonable government actor that his

actions violate federal law." *GJR Investments, Inc. v. County of Escambia, Fla*., 132 F.3d 1359,

1366 (11th Cir. 1998).  The Eleventh Circuit recognizes three ways in which an official would

have fair warning that his conduct violates established law. *Golthy v. Alabama*, 287 F.Supp.2d

1259, 1266 (M.D.Ala. 2003).  An official would be on notice if (1) the law is clearly embodied

in the Constitution or a federal statute, (2) case law declares certain conduct to be a violation

without regard to the facts, or (3) case law declares certain conduct to be a violation with regard

to a specific set of facts. *See Golthy v. Alabama*, 287 F.Supp.2d 1259, 1266 (M.D.Ala. 2003)

(referring to *Vinyard v. Wilson*, 311 F.3d 1340, 1350-53 (11th Cir.2002).

     The second factor requires a showing that the government official "violated a clearly

established constitutional law." *Id.* As stated above, the mandates of the Fifth and Fourteenth

Amendments require procedural due  process before the taking of property is clearly established.

In this context, the right to procedural hearings of persons or entities charged with violations

under the Alabama Securities Laws are codified in the Alabama Administrative Procedures Act,

which require informal and formal hearings before a final order of taking can be established.  §8-

6-32, Code of Alabama (1975).  Also see *Golthy v. Alabama*, 287 F. Supp. 2d 1259,1264 (M.D.

Ala. 203), "Requiring that a Constitutional Right be clearly established means that liability only

attaches if "'[t]he contours of the right [violated are] sufficiently clear that a reasonable official

would understand that what he is doing violates that right,' " citing *United States v. Lanier*, 520

U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).  In *Harbert International, Inc. v. James*,

157 F. 3d 1271, 1284 (11th Cir. 1998), the Eleventh Circuit Court of Appeals observed: "And

then for the law to be clearly established to the point that qualified immunity does not apply, the

law must have earlier been developed in such a concrete and factually defined context to make it

obvious to all reasonable government actors, in the defendant's place, that 'what his is doing'

violates federal law."  It has been longed established that the taking of property without

compensation and without a due process hearing is a violation of the Fifth Amendment.

*Interstate Commerce Com. v. Louisville & N.R. Co.*, 227 U.S. 88, 57 L.Ed 431, 33 S.Ct. 185

(1913). The Fifth Amendment is made applicable to the State by the Fourteenth Amendment. Borg's taking of Plaintiffs monies without due process was such a violation of a clearly established right.

### III.  CONCLUSION

Based on the foregoing Arguments and Authorities, Defendant's Motion for Summary Judgment is due to be overruled.. "If there is substantial evidence opposed to the motion such that  reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied." *Combs v. Plantation Patterns, Inc.,* 106 F. 3d 1519, 1526 (11th Cir. 1977).

Respectfully submitted,


/s/ Henry L. Penick
Henry L. Penick
Attorney for Plaintiff
H. L. Penick & Associates, P.C.
P. O. Box 967
Birmingham, AL 35201-0967
(205) 252-2538


### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on this the 27th day of June, 2007, by e-filing as follows:

Bruce Downey, III
Capell & Howard, P.C.
150 South Perry Street
P.O. Box 2069
Montgomery, AL 36102-2069

/s/ Henry L. Penick

13