IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-cv-1083-WKW |
| | ) | [wo] |
| JOSEPH BORG, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Motion to Dismiss (Doc. # 34), Motion for Summary Judgment (Doc. # 50), and Motion for Judgment as a Matter of Law (Doc. # 51), as well as Plaintiff's two motions for extension of time to file responses (Docs. # 52 & # 55). For the reasons that follow, the plaintiff's motions for extension of time will be denied and the defendant's summary judgment motion will be granted, rendering moot his remaining claims.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Terry Harris ("Harris") brings this § 1983 action against Joseph Borg ("Borg"), the Director of the Alabama Securities Commission ("Commission"), for the Commission's issuance of a Cease and Desist Order ("Order"). Harris alleges that Borg's actions were violative of the Takings, Equal Protection, and Procedural Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

Harris, an African-American male, acted as a securities dealer through various investment clubs including Networker 2000.com, Wealth Builders International Investment Club ("WBIIC"), and N2K Investment Club. In late 2002, the Commission began an investigation into the securities dealings of Harris. Allegedly, "an outside individual" complained to the Commission about

"possible securities violations" of Harris. (Doc. # 50, Borg Aff. ¶ 3.) Shortly thereafter, Special Agent Reuben Redd ("Redd") commenced an investigation into the alleged securities violations.

Harris alleges that the Commission forced him to liquidate the accounts at a loss. Borg contends that Harris liquidated the accounts voluntarily. As evidence of this assertion, Borg points to a series of letters between the Commission and Harris and his attorneys regarding liquidation of the accounts. John M. Foley, a Senior Special Investigator for the Commission, testified that all parties "negotiated with the ASC on a manner in which Mr. Harris could close his pooled accounts and return what remained of his investors' contribution to them." (Doc. # 50, Foley Aff. ¶ 2.d.) On March 20, 2003, Harris faxed a letter to Foley describing his plans to "voluntarily do a quiet rescission of principal and interest earned in the investment club formerly known as Wealth Builders International." (Doc. # 50-2, Attach. 7, at 2.) Harris set forth a detailed plan outlining his intentions in liquidating the accounts by "transferring [the money] into [the investor's] own brokerage account at optionsXpress." (*Id.*)

Also on March 20, 2003, Andrew Chambliss, an attorney representing Harris, faxed a letter to Foley describing "the steps being taken with respect to the proposed Wealth Builders International rescission." (Doc. # 50, Attach. 8, at 2.) Chambliss recommended that the investment account with Charles Schwab be transferred to the firm's trust account. Foley responded to Chambliss on April 1, 2003, and stated that Harris's outline in his March 20, 2003 fax was "unacceptable." (Doc. # 50, Attach. 9, at 1.) Foley suggested that Harris should liquidate the positions under the "supervision and coordination" of Chambliss. (*Id.*) On April 1, 2003, Foley sent Warren Dreher, Counsel for Charles Schwab, a letter outlining the plan of liquidation. (Doc. # 50, Attach. 10.) Finally, on April 15, 2003, Harris authorized Schwab to "liquidate all stock and option positions in the Wealth

Builders International account . . . ."  (Doc. #50, Attach. 4.)

On June 10, 2003, the Commission issued the Order, signed by Borg as the Director of the Commission, to Harris and other individuals who promoted or operated the investment clubs.  The Order summarized an alleged scheme whereby Harris and others perpetrated a fraud upon investors in the investment clubs.  It stated that Harris and others "engaged in the offer and/or sale of investment contracts to investors, involving membership interests in [various investment clubs], that were neither registered nor exempt from registration, into within and from (sic) the state of Alabama." (Doc. # 50, Attach. 1 ¶ 10.)  Moreover, Harris posted unrealized profits to investors, and used investors' funds to pay other investors' gains.  The Order concluded by requiring, partly because Harris was not a registered dealer or agent for securities, "that [Harris and others] immediately **CEASE AND DESIST** from further offers or sales of any security into, within, or from the State of Alabama."  (*Id.* at ¶ 25.)

On September 30, 2003, the Commission, Harris, and WBIIC entered into an agreement outlining the actions taken in liquidation of the accounts.  (Doc. # 50, Attach. 11.)  By the terms of the agreement, $2,527,776.50 was deposited in the trust account of Harris's attorney, who forwarded the funds to the Commission for pro rata distribution to the investors. Moreover, Harris waived all claims to the funds.  (*Id.* at ¶ 3.)  The returns to investors did not "result in a total repayment to the investor but only a partial reimbursement."  (*Id.*)

Harris filed this suit against Borg on April 18, 2005.  In his initial complaint, he named a class of individuals from Networker2000.com and WBIIC as potential plaintiffs. By Order (Doc. # 28) dated October 31, 2006, Harris's class certification was denied because Harris failed to establish the prerequisites of Federal Rule of Civil Procedure 23 for class certification.  On

3

December 11, 2006, Harris attempted to amend his complaint to add WBIIC, an unincorporated association, and Wealth Builders International, a *de facto* LLC, as plaintiffs; however, the court denied the amendment because Harris was merely attempting to bypass the denial of class certification by the addition of these two parties.  (Docs. # 35 & # 44.)

On May 23, 2007, plaintiff was ordered (Doc. # 49) to respond to Borg's Motion for Summary Judgment by June 20, 2007.  In light of Harris's failure to respond to the summary judgment motion, Borg filed a Motion for Entry of Judgment (Doc. # 51) on June 25, 2007.  The next day, Harris filed a Motion for Enlargment of Time (Doc. #52), and on June 28, he filed a second Motion to Enlarge Time to File Response (Doc. # 55).

## II.  JURISDICTION AND VENUE

This action involves a § 1983 claim, which implicates federal question jurisdiction pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th

4

Cir. 1995). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). A genuine factual dispute exists if the "jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (citation omitted). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

Borg argues that he is entitled to judgment as a matter of law on several grounds. First, Harris failed to timely respond to the summary judgment motion. Second, Borg is entitled to absolute immunity under the Eleventh Amendment as well as qualified immunity. Third, Harris failed to state a claim on the face of his complaint.

### A.    *Motions for Enlargement of Time*

Harris's two motions for enlargement of time to respond to the summary judgment motion will be denied. This is an unusual circumstance, a result ordered after serious consideration. The

primary reason is Harris has a pattern of ignoring orders of the court and rules of procedure.

Harris first ignored the court's May 12, 2006 scheduling order (Doc. # 21) by failing to timely file a motion for class certification, which resulted in Borg having to file a motion to dismiss the class action claims. Harris then ignored the court's order (Doc. # 23) setting a deadline to respond on September 1, 2006. Harris, without leave of court, instead filed his own affidavit, rather than the required brief or any accompanying pleading, three weeks after the deadline.

When Harris's class actions claims were dismissed, the court ordered (Doc. # 28) that he file amended pleadings reflecting the dismissal and set a status conference to be held in open court on November 13, 2006. Although Harris timely filed his amended complaint, not only did he fail to make the proper amendments to the pleading, but he also made unauthorized amendments in an attempt to bypass the denial of class certification. Counsel for Harris then failed to appear at November 13 status conference, which resulted in his court-ordered reimbursement of Borg's attorney fees incurred by attendance at the conference. (Doc. # 37.) Without leave of court, Harris filed a "Second Amended Complaint" on December 8, 2006, which was ultimately not allowed. (Doc. # 44.) After Borg's summary judgment motion was filed, the court ordered (Doc. # 47) Harris to file a response by June 20, 2007. He failed to do so. After this deadline passed, Harris twice requested enlargements of time. Borg opposes further enlargement of time.

Although Harris's repeated failures to comply with court orders weigh against allowing his late-filed response to summary judgment, a review of the substance of his response tips the scales in favor of a full denial of his motions for enlargement of time. Simply stated, Harris's response to summary judgment, which was filed without leave of court, is insufficient to create a genuine issue of material fact. Therefore, Harris's motions for enlargement of time will be denied. However, by

6

denying Harris's motions, the court does not stamp-grant Borg's summary judgment motion merely because no response has been filed. The court, after an independent review and analysis of the motion, will grant the motion.

**B.    *Immunity***

### 1.    Eleventh Amendment

Absent abrogation or waiver of immunity, the Eleventh Amendment[1] absolutely bars suits by individuals against state governments in federal court. *See Edelman v. Jordan*, 415 U.S. 651 (1974); *see also Quern v. Jordan*, 440 U.S. 332 (1979) (holding that § 1983 is not congressional abrogation of state immunity ); *Williams v. Bennett*, 689 F.2d 1370, 1377-78 (11th Cir. 1982) (finding that Alabama has not waived its immunity from suit). There is no dispute that the Commission is an agency of Alabama state government and thus is immune for Eleventh Amendment purposes. To the extent that Harris seeks recovery from the Commission, those claims will be dismissed.

However, the Eleventh Amendment does not prohibit suits against state employees sued in their individual capacity for money damages or sued in their official capacity for prospective equitable relief. *See Ex parte Young*, 209 U.S. 123 (1908) (holding that a plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a

---

[1] The Eleventh Amendment provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

state agency directly even though in reality the suit is against the state). Eleventh Amendment sovereign immunity may not apply to bar relief under § 1983 when a state official is sued for prospective injunctive relief to "end a continuing violation of federal law." *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 73 (1996).

### 2.    **Qualified Immunity**

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.'" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)). There is no dispute that Borg was acting within the scope of his discretionary authority.

Once it is established that the defendant was acting within his discretionary authority, the burden shifts to the plaintiff to prove that qualified immunity is not warranted. *Vinyard*, 311 F.3d at 1346. Qualified immunity analysis occurs in two stages. First, the court must determine whether the plaintiff's allegations establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that the court must evaluate the complaint to determine if, assuming the allegations are true, it pleads a cognizable violation of the constitution). If this is answered in the affirmative, the court's second step is to determine whether the right in question was clearly established. *Saucier*, 533 U.S. at 201. Because the plaintiff's allegations do not establish a constitutional violation, Borg is entitled to qualified immunity. The court's analysis

of Harris's alleged constitutional violations follow.

## C.    *Takings Clause*

Harris contends that "the liquidation of the Wealth Builders accounts and the seizure of funds . . . constituted a taking of property . . . ," (Doc. # 54, Pl.'s Resp. Br. at 2), and claims that "[a]s a result of said Cease and Desist Order and Order to Liquidate said accounts, Plaintiffs suffered a lost [sic] in the value of their interest in said accounts." (Doc. # 29, Am. Compl. ¶ 10.) Harris argues that Borg violated the Takings Clause of the Fifth Amendment. "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (citations omitted). Harris's allegations do not constitute a violation of the Takings Clause.

An individual asserting a Takings violation must have an interest in the property that has allegedly been taken by the state. Harris does not identify his "legally protected interest" allegedly violated by Borg, thus failing to establish an injury in fact; therefore, he does not have standing to bring this claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Harris never claims that he lost any money as a result of the Cease and Desist Order from the Commission. Harris merely asserts that *his investors* lost money because of the Order. In Harris's initial fax to Foley, he highlighted that he would "return all of the investor's money." (Doc. # 50, Attach. 7, at 2.) Furthermore, to the extent that Harris had any property interest in the management of the accounts, he claims that he "had absolutely no control over what happened with Wealth Builders International." (Doc. # 54-5, Harris Dep. 124:4-7.) Even more telling, Harris agreed that he would "waive any claim to the funds held in escrow by Baker, Donelson." (Doc. # 50, Attach. 6 ¶ 3.)

9

Moreover, the Commission did not "take" the investors' funds. Whatever amounts remained were returned to the investors. Any losses from the investors' initial investments are not attributable to the Commission's Order. For these reasons, Harris does not state a claim for a Takings clause violation.

### D.    *Procedural Due Process*

Harris claims that Borg violated his procedural due process rights. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. For Harris to survive summary judgment, then he must offer sufficient evidence of three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006) (internal quotation marks and citation omitted). "Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts." *Id.* at 1348.

The court finds that Harris does not have a property interest in the WBIIC account for two reasons. First, Harris has disclaimed any control of the accounts and any knowledge as to how the accounts were set up. Second, Harris has not alleged that he has any interest in the money of his investors. He does not contend that somehow he had money in this account. He only contends that the Cease and Desist Order caused losses to the WBIIC accounts. Any losses to the accounts have been incurred by the investors and not by Harris.

Even if he has alleged an interest sufficient to establish the first element of a procedural due process violation, Harris has failed to demonstrate that he was subjected to a constitutionally inadequate process. Harris argues that he did not receive a hearing before the Commission pursuant

10

to § 8-6-32 of the Alabama Code.  Section 8-6-32 grants an entitlement to a hearing, but it places the burden on the aggrieved party to request that hearing "within 28 days after delivery of the [cease and desist] order."  Ala. Code § 8-6-32 (1975).  Harris points out that he requested a hearing in his Verified Answer to the Order, which was received by Foley on July 8, 2003.  (*See* Doc. # 54, Answer, Ex. 6.)  However, Harris's evidentiary submission in support of his opposition to dismissal shows that he, seemingly without justification, failed to attend his scheduled hearing and failed to reschedule with the Commission.  (*See* Doc. # 39, Ex. 3.)  By letter to Harris's counsel dated August 13, 2003, the Commission informed Harris that "the hearing was to take place on Thursday, August 7, 2003; at virtually the last moment we learned that you would not be able to attend that meeting. The staff has heard nothing from you since that date." (*Id.*)  Harris has not attempted to discredit the letter by the Commission.  The court finds that Harris was given an opportunity to be heard before the Commission, but that he did not take advantage of the procedure.  For these reasons, the procedural due process claim must fail.

### E.    *Equal Protection*

Harris alleges an equal protection violation.  Harris argues that Herbert Van Barringer ("Van Barringer"), a white male, was not prosecuted by the Commission for his role in defrauding investors.   Harris claims that he, as an African-American male, was "singled out [by the Commission] because of his race."  (Doc. # 54, Pl.'s Resp. at 10.)

"[T]he Equal Protection Clause requires government entities to treat similarly situated people alike."  *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006).  It "prohibits selective enforcement of the law based on considerations such as race."  *Whren v. United States*, 517 U.S. 806, 813 (1996).  To prevail on his selective enforcement claim, Harris must proffer sufficient

evidence "(1) that others similarly situated have not generally been prosecuted and (2) that the government's discriminatory selection of him is invidious, or in bad faith that is based on constitutionally impermissible considerations, such as race or religion." *Durruthy v. Pastor*, 351 F.3d 1080, 1091 (11th Cir. 2003) (internal quotation marks and citations omitted). A comparator is not similarly situated unless he is identical in all relevant respects. *Campbell*, 434 F.3d at 1314.

The court finds that Van Barringer is not similarly situated. Harris alleges that his and Van Barringer's roles in WBIIC were different. While Van Barringer was the President of WBIIC and a member of the core group that participated in trading of the stocks, Harris was merely the founder of the group and did not participate in the trading of stocks. Moreover, Van Barringer received the same Cease and Desist Order that Harris received from the Commission, from which one may infer that the Commission treated both individuals in a similar fashion.

Harris also has not offered any evidence of Borg's intentional discrimination. Harris argues that "Equal Protection under the law would require criminal prosecution of Barringer by Borg with equal zeal as he prosecuted Harris." (Doc. # 54, Pl.'s Resp. at 10.) However, the circumstances surrounding any criminal prosecution that occurred is not properly before the court because it is not alleged in the Complaint. Additionally, Harris has provided no evidence that Borg intentionally singled him out because of his race. Harris has not attempted to refute Borg's statement that race played no part in the Commission's investigation of Harris. (Doc. # 50, Borg Aff. ¶ 4.) Harris was investigated by a black male, Reuben Reed, and all of Borg's actions with respect to Harris were consistent with Mr. Reed's suggestions. (*Id*. at ¶¶ 3-4.) Even considering his late-filed evidentiary submission, the court concludes that Harris has failed to provide sufficient evidence that Borg treated him differently from any similarly situated individual because of his race.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1.      The motions for enlargement of time to respond (Docs. # 52 & 55) are DENIED;

2.      The Motion for Summary Judgment (Doc. # 50) is GRANTED;

3.      Judgment will be entered in favor of Defendant Joseph Borg and against Plaintiff

Terry Harris;

4.      The Motion to Dismiss (Doc. # 34) and Motion for Judgment as a Matter of Law

(Doc. # 51) are DENIED as MOOT; and

5.      All remaining dates and deadlines are CANCELLED.

An appropriate judgment will be entered.

DONE this 28th day of September, 2007.

_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE

13